(Decided February 11th, 1862.)

---

## CAROLINE MORY, Exc'x of CATHARINE MICHAEL, and ALBERT MORY, her husband, *vs.* ISAAC MICHAEL.

By an ante-nuptial contract the money, *choses in action*, book accounts, and other personal property of the wife, assumed to be of the value of $4250, was assigned to her husband as mouey to that amount, and, in consideration thereof, he *covenanted* and *agreed* to pay the wife annually, during her life, the interest on that sum for her sole and separate use, with *power* to her to devise and bequeath the same, with the interest due thereon, by will, as if she were a *feme sole*, and, in default of such appointment by will, to pay the same to any child or children she might leave. The wife died leaving a will, devising *all her estate, real, personal and mixed, to her* daughter. HELD :

1st. That the husband took the legal title to this fund, and the interest thereon, clothed *with a trust* for the parties beneficially interested therein, under the contract; and a *court of equity has jurisdiction* at suit of the wife's executors, for failure on the part of the husband to execute this trust.

2nd. The interest due and unpaid at the decease of the wife, was, by the contract, *her sole and separate* property, which she could dispose of by will, and which passed by her will, independent of her power of appointment under the contract.

3rd. But the will making no reference to the power, nor to the principal sum of $4250, the subject of the power, and there being property upon which the will could operate, independent of the power, it is *not a good execution of the power*.

Mory, Exc'x of Michael, *vs.* Michael.

The creation of a trust depends upon intention, and when expressions are used manifesting an intention that the grantee, or donee, is not to have the beneficial use of the property, but is to hold it for the benefit of another; he will be considered as a trustee holding the legal title for the beneficial owner.

The intention to execute a power of appointment by will, must appear by a reference in the will to the power, or to the subject of it, or from the fact that the will would be inoperative without the aid of the power.

APPEAL from the Equity side of the Circuit Court ' for Frederick County.

By an ante-nuptial contract, or articles of agreement, dated March 4th, 1850, between Isaac Michael and Catharine Baker, made in contemplation and consideration of marriage, the said parties, under their hands and seals, entered into covenants and stipulations in substance as follows:—The said Catharine being possessed in her own right of money, *choses in action,* book accounts and other personal property, to the amount of $4250, doth hereby assign and convey the same to the said Isaac, and he, in consideration of the said sum of $4250, *doth covenant and agree with the said Catharine, her executors, administrators or assigns,* to pay to her, the said Catharine, her executors, administrators or assigns, during her life, notwithstanding her coverture, the *annual interest* accruing on said sum *for her sole, separate and exclusive use and benefit, free from his marital rights,* and in case the said Isaac should die before the said Catharine, he, the said Isaac, *doth bind his heirs, executors or administrators,* to pay to the said Catharine, her executors, administrators or assigns, the said sum of $4250, with any interest which may be due thereon. And it is further agreed by the said parties, that the said Catharine *shall be at full liberty to devise and bequeath the said sum of $4250, and any interest which may be due thereon, as if she were a feme sole, and that he, the said Isaac, will consent to any will or wills, or to any codicil or codicils which she, the said Catharine, may make during coverture with the said Isaac, and that he will assent to the same in writing,* and in default of any such appointment by will or codicil, he, the said

Isaac, binds himself, his heirs, executors or administrators, in the event of his surviving the said Catharine to pay the said sum to any child or children *she may leave,* 'equally among all if more than one. And it is further agreed, that the said Catharine shall, during her coverture, receive the rents and profits of the house and lot in Middletown, now owned and occupied by her, *for her sole, separate and exclusive use,* and shall, during her coverture, have power to sell and convey the same and invest the proceeds in such manner as she may direct for her sole, separate and exclusive use and benefit; and the said Isaac doth covenant and agree to unite with her in in any deed or conveyance which may be necessary to convey title to the same; and he doth further covenant and agree, that she, the said Catharine, *may devise the said real estate or any other real estate which she may purchase during coverture, and may bequeath the proceeds of any sale of real estate to any person whom she may appoint,* and in default of appointment, then that such real or personal estate shall descend to and be distributed among any children *she may leave,* if more than one, and if only one, that such child shall receive the whole personal and real estate which she may leave. And it is further expressly agreed, that this agreement and no matter and thing therein contained, shall debar the said Catharine from any right which she may acquire by virtue of her intermarriage with the said Isaac, either in his real or personal estate.

The marriage took place, and on the 26th of April 1856, the wife executed a will, in which, after directing payment of her debts and bequeathing legacies of $100 each, to five of her relatives, she added:—"*All the rest and residue of my estate, real, personal and mixed, I give, devise, and bequeath unto my daughter, Caroline M. Baker, her heirs and assigns forever,*" and appointed the said Caroline her sole executrix. No assent in writing, or otherwise, of her husband to this will, appears. The wife died on the 28th of February 1858, and letters testamentary under her will on her estate were granted on

the 9th of August 1858, to the said Caroline M. Baker, who subsequently intermarried with Albert Mory, who thereby became jointly interested in the execution of said trust of executorship, and the bill in this case was filed by them in that capacity on the 14th of October 1858, against the appellee, the surviving husband of the said Catharine.

The bill after stating the contract, will and facts as above, charges, that the will was made in pursuance of the power of appointment, vested in the said Catharine by the said contract; that the defendant paid the interest on the $4250, up to February 4th, 1854, to the said Catharine in her lifetime, but has never paid any part thereof since that time, and the whole principal sum with interest from that date is still due and in the hands of the defendant charged with the trusts, and subject to the powers set out in said contract, by which the principal sum passed into his hands in trust to pay the interest thereon to the said Catharine during her life, for her sole and separate use, and if she survived him, in trust that his executors and administrators should pay over the same with any interest due thereon to the said Catharine, her executors, administrators or assigns, and she had full power to devise and bequeath the same as if she were a *feme sole*, and if she died without exercising her disposing power, the said sum and interest was limited over to her child or children. The bill further charges, that under said contract said principal sum and the interest due thereon, vested in the said Catharine in her own absolute, separate right, and was subject to her disposing power reserved to her in that contract, and in the exercise of that power she executed the will above set forth, and by virtue thereof, said sum and the interest due thereon, passed to the complainant, Caroline, as executrix of said will; that the defendant has refused, and still refuses, to pay the same or any part thereof, though repeatedly called on and required so to do, and that the complainants have no remedy at law. The prayer of the bill is, that the defendant may be compelled to pay to the complainants the said sum of $4250, and the inter-

est due thereon, or so much thereof as the complainant, Caroline, may be entitled to, in right of the said Catharine, as her executrix and representative under and by virtue of her said will, and for general relief. To this bill the defendant demurred:—

1st. Because it does not state a case entitling the complainants to the relief sought as to payment of the $4250, with interest to the complainant as executrix of the said Catharine, for that said will, a copy of which is exhibited with and made part of the bill, is not a good and valid execution of the power contained in said marriage contract.

2nd. For that the complainant, if she has any remedy as to the recovery of the $4250, has full and complete remedy at law, and this court, as a court of equity, has no jurisdiction over the subject matter, as the object of the bill is to recover money only on a covenant to pay.

3rd. For that the only object of the bill is to recover the $4250, with interest, by the complainant, as executrix of the said Catharine, for which, if she is entitled to recover at all, she has full and complete remedy at law, and this court has no jurisdiction over the subject matter as a court of equity.

The court, (NELSON, J.,) under agreement, passed a *pro forma* decree, sustaining the demurrer and dismissing the bill, from which the complainants appealed.

The cause was argued before BOWIE, C. J., BARTOL, GOLDSBOROUGH and COCHRAN, J.

*R. H. Marshall* and *William J. Ross*, for the appellants.

1st. Has a court of equity jurisdiction in the case made by the bill? The appellants insist the jurisdiction is clear. The case arises upon an ante-nuptial contract, and springs out of its construction. To enforce such a contract and whatever appertains to the separate property of a married woman, has always been a peculiar subject of equity jurisdiction. 2 *Story's Eq.*, secs. 1385, 1386. 14 *Md. Rep.*, 267, *Bridges &*

*Woods*, *vs. McKenna.* The contract which the bill seeks to enforce, presents a clear case of trust in the appellee, over which equity has undoubted jurisdiction. There was no necessity of a trustee, in such a case, to perfect the trust, for the husband will be held to be mere trustee for the wife. 2 *Story's Eq.*, sec. 1380. 3 *Johns. Ch. Rep.*, 540, *Bradish vs. Gibbs.* This contract, though made before marriage, is yet one in consideration of the marriage. It is not extinguished by the marriage, and it is the peculiar duty of courts of equity in such cases to carry out the intention of the parties and enforce the provisions of the contract. 2 *Story's Eq.*, sec. 1370. It is true, there are some contracts prior to marriage, but which are not to be performed until after the death of the husband, in which a court of law will assert its jurisdiction. 5 *Term Rep.*, 381, *Milbourn vs. Ewart.* But though in such cases, courts of law may have concurrent jurisdiction with courts of equity, it does not oust the jurisdiction of the latter, which still remains unaffected, and is the most efficient in the enforcement of such contracts; this is clear upon authority, and is well sustained. 2 *Story's Eq.*, sec. 1371 and *note.* But in this case there is a clear trust, as to the interest or increment of the fund, to be performed during the marriage, and over which a court of law could never assert its jurisdiction, because in such cases the courts of law cannot sustain suits between a *feme covert* and her husband. It is clear, in every view of the case, that the jurisdiction in such cases does vest in a court of equity, and it is its peculiar jurisdiction to enforce all such contracts.

2nd. The next question is, whether the will of the wife is or not a good and valid execution of the power in the marriage contract, as regards the $4250, and the interest due thereon? It is admitted this will was not executed in conformity with the requirements of the Act of 1842, ch. 293, sec. 6, and that it is wholly inoperative unless as an execution of the power conferred by the marriage contract. But this contract clearly authorizes the wife to appoint by will, as though she were a *feme sole,* this fund and any interest due thereon, and the hus-

band covenants to consent in writing to such appointment. The wife did make her will in due form of law sufficient to convey real and personal estate, and this will was duly admitted to probate. The rights and powers of a *feme covert* over property settled for her sole and separate use, are now well settled in Maryland:—where property is thus settled and a *mode* is pointed out for an appointment, in the instrument creating the estate, that mode must be pursued. 5 *Md. Rep.*, 220, *Miller & Mayhew, vs. Williamson.* But where the instrument is silent as to her disposing power, she is to be regarded as a *feme sole,* as to her separate estate, and her disposing power springs from, and is an incident of, her estate, and unrestricted as to its character. 11 *Md. Rep.*, 492, *Cooke vs. Husbands.* It is insisted that no well grounded exception can be taken in this case as to the *quo modo* adopted, and by which the power is sought to be executed. The power conferred to appoint is by will—the donee of the power made a will in due form of law, and if she intended thereby to execute the power, it is clearly sufficient for that purpose. The power here cannot be construed as a license to make a will, which would require the husband's assent to make it valid, because it is a power given her by contract, in consideration of marriage, in which a power is reserved over her own property as a *feme sole.* In such a case, if the assent of the husband can be considered as intended by the parties to be a formal part of the instrument by which they intended the power should be executed, and the instrument is defective in this particular, a court of equity will aid the defect, and not allow the power to fail if the intent to execute the power is sufficiently indicated. 1 *Story's Eq.*, sec. 172. The bad faith of the husband in such a case will not be countenanced by the court, particularly where the appointees are meritorious. If the power of appointment, upon a fair construction of the contract, is confined to the $4250, and is silent as to the interest due at the time of the wife's death, then the power of disposition is unrestrained as an incident of her right of property in her capacity as a *feme sole,* for it is

clear that that part of the fund, under the contract, was hers in absolute right, and under such cirumstances the will, if intended as an execution of her power, is good and valid as such. 11 *Md. Rep.*, 492, *Cooke vs. Husbands.*

Did the wife then *intend* to execute the power by her will? Like all other questions on wills, this depends upon intention: if this satisfactorily appears it is all that is required. This intention need not appear in *express terms* on the face of the instrument, nor need the power be referred to; the intent to execute the power, however manifested, whether directly or indirectly, or by just implication, is sufficient to make it valid. 4 *Kent*, 335. 3 *Johns. Ch. Rep.*, 551, *Bradish vs. Gibbs.* 1 *Story's C. C. Rep.*, 426, *Blagge vs. Miles.* In every particular case a question of construction must arise to ascertain the intention. In many cases, (adopting the rule distinguishing power from property,) such general language as is used in this will, has been held not to be, of itself, sufficiently specific to execute a power, though sufficient to bequeath an interest. Such is the principle settled in most of the cases relied on by the appellee. But if the distinction, as a general rule, be admitted to be sound, still, if in any particular case a sufficient indication can be found of an intention to execute the power, that intention will prevail. 8 *Ves.*, 591, *Roach vs. Haynes.* 4 *Russ*, 76, *Walker vs. Mackie. Ibid.*, 292, *Grant vs. Lynam.* 2 *Ves.*, 589, *Standen vs. Standen.* 1 *Taunt.*, 289, *Morgan vs. Surman.* 15 *Law Lib.*, 394. The testatrix professes to devise all the real and personal estate she owned; she had no other real estate but that embraced in the power:—it is specific as to the real, and clearly indicates her intention to execute the power, and will extend to the personal estate. In all cases a will operates as an appointment under a power, provided it has no operation without the power. 4 *Kent*, 335. 3 *Johns. Ch. Rep.*, 551, *Bradish vs. Gibbs.* Even *Sir Edward Clere's case*, where the strict rule was sustained, admits this to be a sound principle of construction. Now this is a case where a married woman having a testamentary power of appointment makes a

will, and it must be intended to be an exercise of the power, though it contains no reference to it, because the will of a married woman can operate in no other way than as an execution of the power. *Churchill vs. Dibben,* in note to 9 *Simons,* 447. See, also, 1 *Story's C. C. Rep.,* 426; 3 *Johns. Ch. Rep.,* 551; 1 *Hoff. Ch. Rep.,* 2, *Heyer vs. Burger;* 3 *Ves.,* 299, *Hales vs. Margerum;* 15 *Law Lib.,* 232; 6 *Brown's Pa. Cases,* 158, *Roscommen vs. Fowke.* In the cases of *Lovell vs. Knight,* 3 *Sim.,* 275, and *Lempriere vs. Valpy,* 5 *Sim.,* 108, *femmes covert* having power, in general words, gave all to their husbands, and were held not to have exercised their disposing power, but after a careful examination of these cases, there will be found nothing in them which can weaken the reasons upon which *Churchill vs. Dibben* is based; they were cases in which the wives possessed *mere* powers of appointment, and no absolute interest in the subjects of appointment, and they employed general words in their wills without reference to the powers or the subjects of the powers. Such is not the case here, and it is submitted there is nothing in any of the cases that ought to create a doubt as to the soundness of the doctrine announced in *Churchill vs. Dibben.* Here a clear power is conferred upon a *feme covert* over *her own estate.* If this had been a will of a person acting *sui juris,* there could be no doubt of the intent to devise *all that* the testatrix had, and would operate as a devise of the interest, and not as a power over the interest of another. If this be so, how can the just conclusion be avoided, that a person in the position of a *feme covert,* who can devise or bequeath her interests in no other mode than by the exercise of her power, did mean and intend by the employment of the same language, to execute her power, to devise and bequeath her interest secured to her by her marriage contract? This view of the case is fully sustained by the cases of *Standen vs. Standen, Hales vs. Margerum,* and, also, in the just criticism of all the cases by *Sir E. Sugden,* in 15 *Law Lib.,* 223. If this position be correct, then what interest had the wife in this case under the marriage contract? The whole estate

was hers before marriage:—by her marriage contract she reserves a right to the interest during coverture, and, on her husband's death, to the whole fund, with a clear power of disposing of the whole estate, real and personal, by will. The limitations in this contract are precisely the same as in *Hales vs. Margerum* and *Standen vs. Standen;* and from those cases it must be considered that the whole fund belonged to the wife in absolute right, or at least sufficiently so, to be devised and bequeathed by the words "all *my* estate, real, personal and mixed." But whatever difference of opinion may exist as to the principal sum, surely there can be none as to the *interest due* at the time of the wife's death. This is clearly her sole and separate estate, which she has a right to will as a *feme sole*, and is embraced by the words *"my estate."* In any view of the case, the demurrer cannot be sustained. Again, the complainant, Caroline, and executrix of the wife, is a child of her first marriage, and the only child the wife left at her death; and if the power is not well executed, will she not take, under the marriage contract, the whole fund? All necessary parties are before the court, and her interest in this particular, will be protected under the general prayer of the bill. It is true, that the bill does not seem to be framed to that end, but if there be error in this particular, in the frame of the bill, and the case can be covered by an amendment, it will be remanded under the Act of 1832, ch. 302, sec. 6.

*Oliver Miller* and *Jos. M. Palmer* for the appellee.

1st. In the execution of the power in relation to the $4250, the terms and directions of the power have not been complied with, and hence, the power was not properly executed. A party creating a power has the right to fix the terms and manner of its execution. The intention of the parties here was, that any will which should be made in relation to this sum of $4250 by virtue of the power, should be made and executed in strict accordance with the provisions of the Act of 1842, ch. 293. The contract requires the assent, in writing, of the husband, to

any will executing the power, and it does not appear he even had any knowledge of an attempt to execute the power, and it is too well settled to admit of doubt, that in the execution of a power, the terms of it should be strictly complied with. 1 *Coke's Rep.*, 173, *Digges' Case.* 1 *Sugden on Powers*, 301 to 303, and cases there cited. 3 *East.*, 410, *Hawkins vs. Kemp.* The fact, that no assent of the husband in writing, as required by the contract, appears, or appears ever to have been asked for, at least shows conclusively, that the wife, when she executed this will, did not suppose she was executing the power, and did not thereby intend to execute it. This fact, upon the question of intention, which will be discussed hereafter, appears to be conclusive.

2nd. The will of a *feme covert*, or any other person, to be a good execution of a power, must either refer to the power which it professes to execute, or to the subject matter on which the power was intended to operate; or it must distinctly appear that the party executing the power had no other property on which the power could operate. This principle has been established by a long series of decisions in the English courts, which cannot be questioned. 2 *Brown's Ch. Rep.*, 297, *Andrews vs. Emmot.* 2 *Merivale*, 533, *Jones vs. Tucker.* 1 *Jac. & Walk.*, 352, *Webb vs. Honnor.* 1 *Swans.*, 67, *Jones vs. Curry.* 2 *Atk.*, 68, *Socket vs. Wray.* 2 *Ves.*, 589, *Standen vs. Standen.* 7 *Ves.*, 391, *Nannock vs. Horton.* 13 *Ves.*, 446, *Bradley vs. Westcott.* 15 *Ves.*, 532, *Anderson vs. Dawson.* 19 *Ves.*, 86, *Irwin vs. Farrar.* 3 *Mylne & Keen*, 666, *Hughes vs. Tanner.* 6 *Bing.*, 475, *Nowell vs. Roake.* 3 *Sim.*, 275, *Lovell vs. Knight.* 5 *Sim.*, 108, *Lempriere vs. Valpy.* 14 *Sim.*, 22, *Hansen vs. Miller.* 1 *Beav.*, 568, *Tawney vs. Ward.* 2 *Spence's Eq.*, 495. 2 *Sug. on Powers*, 227, 228. 65 *Eng. C. L. Rep.*, 934, *Johns vs. Dickinson.* The American cases and authorities are to the same effect. 4 *Kent*, 335. 1 *Story's C. C. Rep.*, 427, *Blagge vs. Miles.* In *Standen vs. Standen* it was held that the will would not have any operation, unless it was to be

considered as an execution of the power, as the testator had no real estate of his own, independent of the power, and, therefore, the intention to execute the power was manifest.   The case of *Churchill vs. Dibben*, decided by *Lord Hardwicke* in 1754, so much relied on by the counsel for the appellants, was decided upon the same principle as that of *Standen vs. Standen*, viz: that the will would have been inoperative, unless in execution of the power.   The cases, *Lovell vs. Knight*, *Lempriere vs. Valpy*, and *Johns vs. Dickinson*, were all cases of wills by *femmes covert*, and are directly in point, and decisive of the question before the court, the last of them having been decided in 1849.   The will here, does not refer to the power, nor to the subject matter of the power.   It professes to pass *all her estate*, and it is clearly shown by the proceedings, that she had and owned for her separate use and benefit, real and personal estate upon which the will might operate, and in truth did operate.   The interest on the $4250 which she received for four years, and the rents and profits of her real estate, would amount to a considerable sum for the will to operate upon, independent of the power.   In this State a *feme covert* can dispose of her own separate estate by will, for as to that she is considered a *feme sole*.   11 *Md. Rep.*, 492, *Cooke vs. Husbands*.   This case destroys entirely the applicability of the case of *Churchill vs. Dibben*, where it was decided the power was well executed, because a *feme covert* had no other capacity than what was given by the power,—in this State she has.   But the very question has been decided by this court, with reference to the same power under the same will, in *Michael vs. Baker*, 12 *Md. Rep.*, 169, where, in affirming the judgment of the orphans court, admitting this will to probate, the court say, that by the marriage contract she was entitled to hold certain funds specified therein, to her sole and separate use, which would pass under her will, though the power of disposing of them may not be expressly conferred upon her by the marriage contract.

3rd. The remedy of the appellants, if they have any, is in a court of law and not in equity.   Where a party has full and complete remedy at law, equity has no jurisdiction, and will

not interpose its aid. The only object of this bill is to recover a specific sum of money and interest, upon *a covenant* to pay. A court of law could give ample relief in such a case. Equity jurisdiction, by writers on the subject, is arranged under six heads: accident, account, fraud, infancy, specific performance and trust. It is true, that in some of these cases, courts of law and equity have concurrent jurisdiction; but this case falls under neither of these heads of equity. The appellee is not liable to the appellants, except upon the *covenant*. He is not a trustee for *them*—his liability to them is upon the covenant only, as the only trust created by the marriage contract was for the benefit of the wife, as a *feme covert*. It was necessary a trust should be created to control matter of property between husband and wife; but the moment the *feme covert* died, for whose use the trust was created, the trust ceased to exist, and the rights of all other parties against the appellee were upon the covenant only, and a court of law has complete and exclusive jurisdiction. 1 *Bald. C. C. Rep.*, 422, 423, *Baker vs. Biddle.* 7 *Johns. Ch. Rep.*, 114, *Kane vs. Bloodgood.*

COCHRAN, J., delivered the opinion of this court.

The questions in this case arise upon a demurrer to the bill of complaint filed by the appellants, claiming under the will of Catharine Michael, deceased.

The bill was filed to recover from the appellee the sum of $4250, and interest due thereon, from the 4th of February 1854, to the 28th of February 1858, which it alleges he received from Catharine Michael under an ante-nuptial contract, dated the 4th of March 1850, subject to a power of appointment by her will, and to which the appellants are entitled under her will, as a valid execution of that power.

The substance of the bill, the ante-nuptial contract and will, are set forth in the statement of this case, *(ante* 228 to 231.) The demurrer presents two grounds of objection to granting the relief prayed:

1st. That the will does not operate as a valid execution of the power contained in the contract.

2nd. That there is no jurisdiction in equity over the subject matter of the bill.

The determination of these questions depends upon the construction to be given to the contract and will, under which the appellants claim, and these will be first considered with reference to the question of jurisdiction. By reference to the contract it appears, that the personal estate of the testatrix, consisting of money, *choses in action,* book accounts and other personal property, was assumed to be of the value of $4250, and that, between the parties to the contract, it was considered, dealt with, and assigned to the appellee, as money to that amount, and that in consideration thereof, the appellee bound himself to pay to the testatrix annually, during her life, interest on said sum for her sole and separate use, free from his marital rights, and covenanted that she should have full liberty to devise and bequeath said sum of $4250, and any interest that might be due thereon, by will or codicil, as if she were a *feme sole,* and in default of any appointment by her, by will or codicil, that he would pay the same to any child or children she might leave. The effect of this contract was to divest the testatrix of the title to the property assigned, and to secure payment of the annual interest thereon to herself during life, for her sole and separate use, with a power of appointment by will or codicil, and in default of such an appointment, to secure payment of the principal sum and unpaid interest to any child or children she might leave. The appellee took the legal title to the property under the contract, with limitations against any beneficial use or interest in himself, and a determination of the character of his relation to it, will decide the question of jurisdiction presented by the demurrer.

Although the contract in some respects is inartificially drawn, it is clear that the intent of the parties to it was, to fix upon the appellee a fiduciary possession of the fund assigned, and create a trust by which the purpose of the testatrix, as to its beneficial use and ultimate destination, would be accomplished. The creation of a trust depends upon intention, and

when expressions used manifest an intention that the grantee or donee of property is not to have the beneficial use, but is to hold it for the benefit of another, he will be considered as a trustee holding the legal title for the beneficial owner.

A gift or grant of property to a grantee or donee, to be applied to a certain use or purpose, fastens a trust on the holding of the legal estate. *Hill on Trustees*, 65. 2 *Ves. Jr.*, 335. 7 *Eng. Law & Eq. Rep.*, 134. 3 *Md. Rep.*, 505. In this case we think the appellee took the property assigned by the contract, as a fund, with the interest as it might or should accrue in the lifetime of the testatrix, incumbered with a trust, and that notwithstanding the form of his obligation in reference to it, relief in equity may be had for any failure or default on his part in its execution.

The remaining question presented by the demurrer is, whether the will, under which the appellants claim, operates as a valid execution of the power of appointment set forth in the contract?

The interest due and unpaid at the decease of the testatrix by the contract, was her sole and separate property, and will pass under the residuary clause of her will, without regard to her power of appointment, upon the principles recognized by this court in 11 *Md. Rep.*, 492, and 12 *Md. Rep.*, 158. The question submitted is, therefore, limited to the operation of the will as an appointment within the terms of the contract upon the principal sum assigned by it to the appellee. The execution of a power of appointment by will must be intended, and the intention must be clearly manifested. The rule of construction by which such an intention may be ascertained, is explicit and exhaustive, and may be thus concisely stated:— The intention to execute a power of appointment by will, must appear by a reference in the will to the power, or to the subject of it, or from the fact that the will would be inoperative without the aid of the power. *Sug. on Pow.*, 301, 303. 4 *Kent Com.*, 385. 1 *Story C. C. Rep.*, 427. In this case the will affords no evidence of a design to execute the power

31    v.18

by either of the modes designated in this rule. It neither refers to the power, nor to the sum of money which was the subject of it, nor is it inoperative for want of property to give it effect as a testamentary act. We think, therefore, that the power set forth in the contract, was not executed by the *will,* and that the appellants claiming only as appointees under the will as a valid execution of the power, (without expressing any opinion as to their rights in other respects under the contract,) are not entitled to the relief prayed.

As we are of opinion that the appellants are entitled to relief upon their bill, to the extent of interest due at the decease of Catharine Michael, without affirming or reversing the decree below, the cause will be remanded under the Act of 1832, chapter 302, for such further proceedings as may be necessary in the premises, each party to pay one-half of the costs of this appeal.

*Cause remanded under Act of* 1832, *ch.* 302.

(Decided February 11th, 1862.)