RICHARD H. WOOLLEN, Trustee, *vs.* WILLIAM F. FRICK and JAMES C. GOLDER, Exc'rs of HENRY WATSON.

*Construction of a Will—Limitation not void for remoteness, as a Limitation over after an Indefinite failure of issue.*

A testatrix by her will probated in 1835, after directing payment of her debts, devised to her friend, Z. Woollen, his heirs, executors, and administrators, all the rest, residue and remainder of her estate, real, personal and mixed, in *trust*, to pay out of the income, certain annuities, (the principal annuitants being her mother, her sister Caroline Price, and her two brothers,) and then bequeathed and devised as follows : "And the residue of such income, with the several sums or amounts above enumerated for my sister and brothers, as the same may cease to be paid to them, respectively as aforesaid, I give and bequeath to my son, Henry Watson, if he be living, during the residue of his natural life, and if he should be living after my said sister ceases to be single, or departs this life, which ever shall first happen, and he shall also (have) survived both of my said brothers, *or left issue or descendants*, then I give and devise to my·said son Henry Watson, his heirs, executors, administrators and assigns, absolutely, not only the income, but also the entire principal of the said rest, residue and remainder of my estate; but in case of the decease of my said son Henry Watson, before my said sister ceases·to be single, or if my two brothers above named or either of them, survives him, *then (in case my said son shall not leave issue or descendants,*) I give, devise and bequeath, to my said friend, Z. Woollen, his heirs, executors, administrators and assigns, absolutely, not only the income of my estate intended for my said son, but also the entire principal of the said rest, residue and remainder of my estate." Henry Watson survived his two uncles, the brothers of the testatrix named in the will, and died in 1871, without ever having had issue, leaving his aunt, Caroline Price surviving him, and unmarried. HELD :

That the limitation of the real estate to Woollen was good and took effect, and was not void for remoteness as a limitation over after an indefinite failure of issue.

Woollen, Trustee, *vs*. Frick & Golder, Exc'rs.

APPEAL from the Circuit Court of Baltimore City.

The bill of complaint in this case filed by the appellant on the 9th of June, 1871, alleged that Rachel Watson, the mother of Henry Watson the appellees' testator, died in December, 1834, having made her last will and testament, whereby she constituted Zachariah Woollen, the father of the complainant, her executor and trustee, to execute certain trusts created by the will, and provided for the payment of certain annuities; that before he had settled his accounts as such executor, he died, and Nathaniel Williams was appointed administrator *de bonis non*, and afterwards by a decree of the Court of Chancery, Henry Watson, the appellees' testator, was appointed trustee in the place of Zachariah Woollen; that Henry Watson gave bond as such trustee, and received from Nathaniel Williams, administrator as aforesaid, all the residue of the personal estate of Rachel Watson, being of considerable value; that Henry Watson continued to act as trustee until his death, which occurred about sixty days before the filing of the bill; that while Henry Watson was so acting as trustee, a farm in Cecil County, of which the said Rachel Watson had been seized, was sold, and the proceeds of sale were received by Henry Watson, as such trustee; and that the complainant had been appointed as trustee in place of Henry Watson, deceased, and had duly qualified as such trustee; that letters testamentary on the estate of Henry Watson had been committed to the appellees, the executors named in his will, and that the complainant had called upon them to settle the trust account, and deliver to him the money and other personal property which were held by Henry Watson as trustee; but that the appellees declined to do so, because, by his last will and testament, Henry Watson undertook to dispose of some part of the trust estate absolutely as his own property, and the appellees asserted his right so to do.

Woollen, Trustee, *vs.* Frick & Golder, Exc'rs.

The bill then charged that Henry Watson had but a life estate in the rents and profits of the trust estate, and that his said pretensions were without any legal warrant whatever. The bill prayed for an accounting as to the trust estate, and that the appellees might be required to deliver up to the appellant all moneys and other property received by Watson as such trustee.

The will of Rachel Watson, a copy of which was filed with the bill, will be found sufficiently set out in the opinion of the Court.

The answer of the appellees, admitted all the material facts alleged by the bill, but asserted that Henry Watson had the absolute right to dispose of the estate, as he did by his will; it further stated that Henry Watson expended certain sums in improvements upon the real estate, and claimed allowance therefor.

The papers in the cause were referred to a special auditor, who made a report, in which he stated that he had not charged the estate of Henry Watson with the proceeds of the realty, or credited it with expenditures on the improvements, because he was of the opinion that the limitation over to Zachariah Woollen of the real estate was void for remoteness, and that Henry Watson had title thereto in fee simple, either as devisee or sole heir at law of Rachel Watson. The auditor stated an account in accordance with the views taken in his report.

A further account was stated, which allowed to the complainant as trustee, the proceeds of the realty, and to the defendants the expenditures for improvements. The defendants excepted to the former allowance, and the complainant to the latter.

It was admitted that all the annuitants mentioned in Rachel Watson's will, except Caroline Price, died in the life-time of Henry Watson, and that he died unmarried and without issue.

An agreement was made for the payment and delivery to the appellant of the undisputed portion of the per-

sonalty, with a reservation of an amount sufficient to meet the allowances for improvements, if the Court should recognize the same.

The Court (PINKNEY, J.,) ruled that Henry Watson took under the will of his mother, Rachel Watson, an estate tail by implication, converted into a fee by the statute, and the limitation over to Zachariah Woollen was void for remoteness, and decreed that the executors of Henry Watson, were not entitled to a credit for expenditures for improvements, and were not accountable to the complainant for the proceeds of the real estate sold.

From this decree, the complainant appealed.

The cause was argued before BARTOL, C. J., STEWART, BRENT, MILLER and ALVEY, J.

*William A. Fisher and Charles Marshall,* for the appellant.

Under the will of Rachel Watson, Henry Watson took a life estate in the realty, and upon this particular estate remainders were limited on "a contingency with a double aspect." 1st. In *case* Henry Watson should survive his two uncles, and should also survive the natural or single life of his aunt, (or she should marry in his life-time,) OR in case he *should die and leave issue* during the life-time of his uncles and aunt, then his life estate should be enlarged to a fee simple estate. 2nd. And *in case* Henry Watson should not survive the uncles and the natural or single life of his aunt, and in case he should die without leaving issue during the life-time of his uncles and aunt, the fee should not vest in him but in Zachariah Woollen. The limitations in controversy are contingent remainders and not executory devises. *Turner vs. Withers,* 23 *Md.,* 40.

Only a life estate is given in the first instance to Henry Watson, and there is no devise at all to his heirs—the

after limitation, on the contingencies stated, is to himself *in fee*. The estate to Zachariah Woollen is not limited after a fee in Henry Watson, but only in the event that the life estate of Watson is not enlarged into a fee. See *Clagett vs. Worthington*, 3 *Gill*, 90, 91.

Even if a fee simple estate had been given in the first instance to Henry Watson, and the limitation to Woollen had been (in the words of the will,) "But in case of the decease of my said son, Henry Watson, before my sister ceases to be single, or my two brothers, or either of them survives him, then (in case my said son shall not leave issue or descendants,) I give, &c. to Z. Woollen," there would have been a limitation over after a definite and not an indefinite failure of issue, and it would have constituted a good executory devise. *Hilleary vs. Hilleary's Lessee*, 26 *Md.*, 274; *Dallam vs. Dallam's Lessee*, 7 *H. & J.*, 237.

The will gives to Henry Watson an estate for life, and then provides for its enlargement into a fee—1st, if he survives his uncles, and the death or marriage of his aunt, whether he has issue or not; and 2nd, if he *does not* survive the death of his uncles, and death or marriage of his aunt, then if he leaves issue.

The limitation over to Woollen is on the direct converse, and he is to take no estate, if Watson should be alive at the death of his uncles, and the death or marriage of his aunt, nor if they or any of them survived him, provided he had left issue.

The two clauses are to be construed together, and the leaving of issue in the second clause must mean the same as that in the first. *Turner vs. Withers*, 23 *Md.*, 42.

If Henry Watson, through any of the contingencies, once obtained a fee simple estate, Zachariah Woollen was to receive nothing; and the estate to Woollen was limited over only in the event that Henry Watson *never* took a fee; and *all the circumstances necessary to determine*

Woollen, Trustee, *vs.* Frick & Golder, Exc'rs.

*whether Henry Watson would take a fee must necessarily have occurred in the life-time of one of his uncles or his aunt.*

Substantially the devise over to Woollen was "in case my said son Henry Watson shall die without having taken a fee under the preceding devises of my will, *then* I give the estate to Z. Woollen."

The devise over to Woollen was not *after the running out of issue*, which is the case calling for the application of the rule against perpetuities, but the leaving of issue was to determine whether Watson took any estate in fee at all; *eo instanti*, this was determined, it was ascertained also whether Woollen took any estate. The first clause is entirely free from ambiguity on the subject. One estate was not, and the words of the second clause must be construed by it, intended to await the other for a moment. 1 *Jarman on Wills*, (492;) *Gardiner vs. Sheldon, Vaugh.*, 259.

*E. Wyatt Blanchard* and *Wm. F. Frick*, for the appellees.

The language of the limitation to Woollen, *standing alone*, imports an indefinite failure of issue of Henry Watson, and the limitation is void as to *real estate*, unless there be found in the devise to Watson some expressions which fix the date of his death as the period at which the failure of issue is to take place. *Torrance vs. Torrance*, 4 *Md.*, 25; *Tongue's Lessee vs. Nutwell*, 13 *Md.*, 425.

In all cases the general intention of the testator shall prevail, and in doubtful cases will govern the construction of particular clauses in a will. Henry Watson was the only child of the testatrix.

Independently of his having or leaving issue, the testatrix gives him her whole estate the moment the trust ceases to be a necessary protection to the annuitants. Her devises to her son are in effect a disposition

Woollen, Trustee, *vs.* Frick & Golder Exc'rs.

of the fee in his favor, subject to the charge of certain annuities for other collateral relatives; and the limitation to her friend and trustee, Woollen, is to take effect only in the event of the extinction of her own line, which could be continued only through Henry Watson.

Disregarding for the moment the possible effect of the direct devise of the fee to Henry Watson in case of his death, leaving issue; the estate of Rachel Watson is thus devised: "I give my son Henry Watson the income of my estate during life, and in case of his death without leaving issue, I give the fee to my friend Z. Woollen." It cannot be disputed that, upon this statement of the devise, the limitation of *real estate* to Woollen is void,

1st.—Because there being no direct devise to the issue of Henry Watson, the manifest intention of the testatrix, that the issue of Watson should take title, can only be effectuated by giving him, by construction of law, an estate of inheritance, of which he *dying seized* his issue become seized by inheritance. The established construction of such a limitation is: That the life estate is enlarged by implication to an estate tail to let in the issue of the life tenant, which estate tail becomes an estate in fee in Maryland, and the limitation over fails for remoteness. *Ridgely vs. Bond & Wife,* 18 *Md.,* 433.

2ndly.—Because there is no language used to except this case from the operation of this rule of estates tail by implication. There is no language used having relation to the death of Henry Watson as the period of failure of issue. The words "leaving issue" import an indefinite failure. *Torrance vs. Torrance, et al.,* 4 *Md.,* 25; *Tongue's Lessee vs. Nutwell,* 13 *Md.,* 425.

There was a life estate in Henry Watson, with alternative limitations of the fee, by way of contingent remainder; First.—To Henry Watson, upon his death leaving issue him surviving: Secondly.—To Z. Woollen, upon the death of Henry Watson without leaving issue him

surviving; and the devise of the fee to Watson removes this case from the operation of the rule by which it would otherwise be governed, and fixes the death of Watson as the point of time when the failure of issue is to take place.

The direct devise of the fee to Watson contains no qualifying *language*. The failure of issue is referred to in the same technical words used in the limitation to Woollen, whose established meaning import an indefinite failure of issue.

It being clear that there is no *language* used in the limitation of the fee to Watson, which qualifies that used in the limitation over to Woollen, can the *bare fact* of the devise of the fee to Watson, affect the construction and prevent the operation of the rule, which would otherwise vest in Watson an estate tail by implication?

In the first place, the direct devise expresses only what the law implies without it. Henry Watson, by the direct devise, could take no different estate than he would have by implication of law. Nor is the fact of a direct devise permitted to alter the construction or prevent the operation of the rule by which estates tail are implied. As in *Daintry vs. Daintry*, 6 *T. R.*, 307, where a contingent estate tail was devised with remainder over on failure of issue, and an immediate estate tail was implied without awaiting the happening of the contingency.

It is clear, that the testatrix intended the issue of Watson to take. But there is no direct devise to his issue. His issue can take only by inheritance, that of which he died *seized.* Viewing the will according to the theory of the appellant, the moment of Henry Watson's death is the point of time when the life estate ending, it is to be determined which of the alternative limitations shall take effect. There could never be seizin of an estate in Henry Watson which could descend.

The direct devise of the fee to Watson, "in case he shall have left issue," &c., could never literally take

effect, and should be regarded as a mere expression of the intention of the testatrix that Watson's issue should succeed to the estate; an intention which would be implied without the direct devise, from the words used in the limitation to Woollen, and which could only be effectuated by such a construction as vests an estate of inheritance in Watson.

MILLER, J., delivered the opinion of the Court.

A very difficult and embarrassing question arises in this case, as to the construction of the will of Rachel Watson, executed in December, 1834, and admitted to probate in January, 1835. By this will the testatrix, after directing payment of her debts, devises to her friend, Zachariah Woollen, his heirs, executors and administrators, all the rest, residue and remainder of her estate, real, personal and mixed *in trust*, to pay out of the income thereof certain annuities, (the principal annuitants being her ·mother, her sister Caroline Price, and her two brothers,) and then follows these provisions:

"And the residue of such income, with the several sums or amounts above enumerated for my sister and brothers, as the same may cease to be paid to them respectively as aforesaid, I give and bequeath to my son Henry Watson, if he be living, during the residue of his natural life; and if he should be living after my said sister ceases to be single, or departs this life, which ever shall first happen, and he shall also (have) survived both of my said brothers, *or left issue or descendants*, then I give and devise to my said son Henry Watson, his heirs, executors, administrators and assigns absolutely, not only the income but also the entire principal of the said rest, residue and remainder of my estate: But in case of the decease of my said son Henry Watson, before my said sister ceases to be single, or if my two brothers above named or either of them survives him, *then (in case my*

*said son shall not leave issue or descendants,*) I give, devise and bequeath to my said friend Zachariah Woollen, his heirs, executors, administrators and assigns absolutely, not only the income of my estate intended for my said son, but also the entire principal of the said rest, residue and remainder of my estate."

Henry Watson survived his two uncles, the brothers of the testatrix named in the will, and died without ever having had issue; but his aunt Caroline Price, survived him and had not been married up to the period of his death. In this state of case the question is, did the limitation of the *real estate* to Woollen take effect, or is it void for remoteness as a limitation over after an *indefinite failure of issue* of Watson? It appears that Watson in his life time, had consulted the most distinguished and eminent lawyers of the State as to his rights under this will, and the opinions of Messrs. JOHNSON, SCHLEY and McMAHON, found among his papers have been printed and submitted for our consideration. In these opinions the very question we are now to pass upon has been elaborately discussed. In addition to these we have the very able arguments of counsel at bar. We have examined the question with the aid thus afforded, and are all of opinion the limitation to Woollen is good. The reasons upon which this conclusion is based we shall now state.

This will took effect prior to the passage of the Act of 1862, ch. 161, and it cannot be doubted that if it contained simply a devise to A for life and "*in case he shall not leave issue or descendants*" then over, the limitation over as to real estate would be void. These words, according to their settled legal construction, import a general or indefinite failure of issue, and whenever found in a will must be taken in their technical legal sense, *unless* there be something clearly demonstrating a different intention on the part of the testator, restricting them to a

definite failure of issue, or a failure of issue at the death of the first taker. Authorities need not be cited for a rule of construction so familiar and well established as this. If, therefore, the only previous devise in this will were to Henry Watson, for life, and that was, immediately followed by this limitation over to Woollen, there would be the implication of an estate tail in Watson, (made a fee by our statutes,) and of necessity the remainder over would fail, or be barred by law, and if there was not enough in these words to imply such an estate tail, still if there were nothing in the previous devises to give a meaning to the words "in case he shall not leave issue or descendants," they would make a limitation over, after an indefinite failure of issue. But by reference to the previous devises it will be seen that these words in the limitation over, are what are termed *referential* words, the reference being to the same contingency in which the fee is given to Watson, only taking the converse side of that contingency. By the previous devises it is clear, the testatrix intended the life interest of her son should be *enlarged to a fee* if he survived the *single* life of his aunt, and the *natural* lives of both his uncles, *or* if he left issue or descendants, whether he survived his uncles and the single life of his aunt or not. Now leaving out of view the contingency depending upon survivorship, Watson is to have the property in fee if he *leaves* issue or descendants, and if he does not, then Woollen is to have it in fee. So that when you determine the moment when the "leaving of issue or descendants" gives Watson the fee you determine the moment when that contingency has either failed, or taken effect as to Watson, and therefore, also the period when the limitation over is to take effect if at all. The intention of the testatrix as to Watson's estate cannot be doubted. It cannot be questioned, that if Watson *leaves* issue or descendants *at his death,* his title to the fee is complete, and that at his death or within the

Woollen, Trustee, *vs.* Frick & Golder, Exc'rs.

usual period of gestation thereafter, it must be determined whether he is ever to have that estate in fee. If he *then* has no issue or descendants, he never can have them, and therefore, all possibility of that contingent estate ever vesting in him then must cease. It must be observed, there is no estate given to the issue, or to await the running out of issue. Both the life estate and the contingent fee are given to Watson himself. The issue are not designated as parties to whom the estate is limited, but the *leaving of them* is fixed as the contingency upon which the tenant for life will take the fee. That is the period at which the fee is to begin and if there are none at the death of Watson, or within the usual period of gestation thereafter, there can be none afterwards to vest the fee. Now the testatrix certainly intended that when Watson's estate should fail, the limitation over to Woollen should take effect, and hence the will, after enumerating the contingencies in which the fee is given to Watson, when it gives the estate over to Woollen, evidently refers to and repeats those contingencies, and in the direct and exact converse of them gives it over to Woollen. Thus it says : "if my said son should be living after my sister ceases to be single, or departs this life, and he shall have also survived both of my said brothers, or shall have left issue or descendants, then I give and devise *to my said son*" the property in fee; "but in case he dies before my said sister ceases to be single, or if either of my said brothers survive him, *then* in case he shall not leave issue or descendants, I give and devise to my friend Zachariah Woollen," the property in fee. Her plain design was that the moment the one estate in fee failed the other should take effect, and the words "left issue or descendants" in the devise to her son, and "in case he shall not leave issue or descendants" in the limitation over to Woollen, were intended to refer to the *same contingency* and the *same period*, and to give the estate in fee the one or the other

direction according to the determination of that contingency. It is therefore the case of a devise for life to Watson, on which remainders in fee are limited on a contingency with a double aspect. It is not the case of a fee to Woollen limited on a fee to Watson, and therefore not the case of an executory devise. If Watson once gets the fee by leaving issue or descendants, *or* by surviving both his uncles and the single life of his aunt, it cannot be doubted that all the limitations over forever cease. If the fee be once vested in Watson by *either* of these contingencies it forever excludes any possible future interest in Woollen. There are, therefore, here two contingent fees not limited to take effect the one upon or after the other, but the one to take effect to the entire exclusion of the other, and the falling out of the contingencies is to decide which of the two is to take effect. It is a case falling within and illustrating the doctrine stated in *Fearne on Contingent Remainders*, 373, thus : " although a fee cannot, in conveyances at common law, be mounted on a fee, yet two or more several contingent fees may be limited merely as substitutes or alternatives, one for the other, and not to interfere; so that one only take effect, and every subsequent limitation be a disposition substituted in the room of the former, if the former should fail of effect." It is also very similar to the case of *Clagett vs. Worthington*, 3 *Gill*, 83. It is very plain from this view of it, that this will does not present a case for the implication of an estate tail in Watson, nor for the application of the rule in *Shelley's Case*. There is no limitation to the issue of Watson, but all the limitations affecting his estate, are *to himself* by way of enlargement of his estate to a fee and not to a fee tail.

. Such is the construction placed upon this will in the learned and masterly opinion of Mr. McMahon. We have taken the liberty of embodying the substance of his views, and to a great extent copying the very language

Woollen, Trustee, *vs.* Frick & Golder, Exc'rs.

he has used as expressing in more vigorous terms and clearer reasoning than we could hope to employ, our opinion of the true interpretation of this instrument. It has been objected to this construction, that the limitation in fee to Watson, if he *left* issue or descendants, is upon a contingency which could not possibly happen *in his life time:* that upon this construction it must be decided *at the moment of Watson's death,* whether the fee vests in Woollen, and if Watson should leave a posthumous son his birth would be after the happening of the contingency which vested the fee in Woollen, and such son could take no title by devise, because there is no devise to the issue of Watson, and could take no title by inheritance because his ancestor did not die seized of the estate or land, and for this is cited the doctrine that a vested legal freehold must not only precede a legal freehold contingent remainder, but the antecedent estate in freehold must subsist and endure until the time when the contingent remainder vests, that is, until the contingency comes to pass ; for it is a general rule that every remainder must vest either during the particular estate, or else at the *very instant* of its determination. *Fearne,* 307. But what difficulty is there in determining that the life estate of Watson and seizin in him of that estate continued during the usual period of gestation after his death, so that a posthumous child would take by inheritance from him? Why should not the possibility of the enlargement *of his estate* to a fee continue during that period?

If he had had issue during his life, the fee would have vested in him, subject to the contingency of such issue dying before him and his leaving no other issue at his death or within the usual period of gestation thereafter. The point here suggested does not appear to have troubled the acute and accurate mind of Mr. McMahon, nor this Court, in the construction of the will in *Clagett vs. Worthington.* In that case there was a life estate in real

Woollen, Trustee, *vs.* Frick & Golder, Exc'rs.

property devised to *Philip Key,* and in case he should have issue of his body lawfully begotten, *then to the said Philip Key in fee simple,* but in the event of his *dying without such issue,* then over. There the contingency of *having lawful issue* could not be definitely ascertained until the expiration of the usual period of gestation succeeding the death of Philip Key, and we cannot doubt the Court would have held a posthumous child entitled to the estate by inheritance. They say there was no limitation over to the heirs or issue of the body of Philip Key so as to let in the operation of the rule in *Shelley's Case,* but the limitation over after his life estate is to Philip Key, *himself,* in fee simple, in the event of his *having lawful issue.* They do not say "in the event of his having such issue in *his lifetime;*" on the contrary, such an expression of opinion is carefully avoided. They say the limitation over to other parties was not *intended* to follow the fee simple estate in Philip Key, and be enjoyed only after its investiture and contingent determination, but was *intended* as a *substitute* for that fee simple estate in case of its *never coming into being according to the contingency provided for its creation.* They then determine that according to the established principles of law applicable to such subjects, this *intention* of the testator could be carried into effect. On this point they state the general rule that a limitation in a will which may operate as a remainder, shall not be construed an executory devise, and hold that the limitation in fee simple to Philip Key cannot operate as a vested remainder as its coming into existence or vesting depends on a contingency which may never happen, to wit: his *having* lawful issue, but that it was good, as a contingent remainder, because of the previously given particular estate for life, on which it depends, and which supports it. They say the happening of the contingency terminates the life estate in Philip Key and creates a fee simple in him in its stead, and that

the non-occurrence of the contingency *and* natural termination of the particular estate for life, gives effect to the substituted contingent remainder in fee in favor of other parties; that the vesting of the contingent remainder in fee in Philip Key depends on the contingent termination of his life estate by *his having issue*, whilst the substituted contingent remainder to other parties can only take effect or vest by the natural expiration of the life estate, *that is to say*, by the death of Philip Key *without having had lawful issue*. They then determine that this kind of alternative limitation is what is termed a contingency with a double aspect, and held that the ultimate limitation over was good, inasmuch as Philip Key had died without ever having had lawful issue born to him. The language and reasoning of the Court would seem to exclude the idea that the difficulty here suggested would have been deemed insuperable if it had arisen and been presented in that case.

But suppose we are wrong in this, and that there cannot be such a thing as a limitation over in fee to a life tenant, in case he *left* issue or descendants, because of the impossibility of an estate in fee being given to a party to take effect only after his death. What is the result, as affecting the case and the question before us? Plainly and only this, that the law would hold the limitation to Watson on this contingency inoperative, and void. But that would not strike the words *out of the will*. They would still remain and afford clear demonstration of the intention of the testatrix that the limitation over to Woollen should take effect upon a *definite* and not an *indefinite* failure of issue of Watson, and the Court would look to them for the purpose of determining that question. The referential character of the words used in the limitation to Woollen would still exist. The reference would be the same, and that would control the construction of the latter clause of the will, and make the limita-

Woollen, Trustee, *vs.* Frick & Golder, Exc'rs.

tion dependent upon a definite failure of issue, and therefore good and effective.

In questions of this kind the general principles governing this branch of real estate law are well settled, and the numerous authorities by which they have been established need not be referred to. The difficulty lies in their application to particular cases, and on this point decisions construing other wills are of little use. Sometimes identical cases may be found, but generally the language and provisions of different instruments are so variant and dissimilar that little or no aid in any given case can be derived from the authorities. We shall, therefore, content ourselves with a reference to a few cases in our own State, not because of their identity with the one before us, but because the reasoning of the Court, and the grounds upon which the decisions are rested, seem to support the conclusion we have here reached. Besides *Clagett vs. Worthington*, already referred to, there is the case of *Watkins vs. Sears*, 3 *Gill*, 492. In that case a testator had devised all his real estate to his wife for life, and after her death, he devised one-half of it to his son, Dennis, in fee, "provided he shall attain the age of twenty-one years, or die *leaving issue;* but in case my said son, Dennis, shall die without issue, *or* before he arrives at twenty-one years, of age," then over to his daughters. Dennis died without issue, but *after* he had attained the age of twenty-one, and the Court held that by attaining that age he took the fee, though he afterwards died without issue. But they also said it was too clear for argument, that the word " or," in the succeeding part of the devise, prescribing the condition on which the limitation over to the daughters was to take effect, "is to be construed copulatively, as if it were 'and,' and that, thereby, the alternative condition (literally construing the will) of *indefinite* failure of issue, upon which the limitation over is made to depend, became a condition

of *definite* failure of issue." We also, without stopping to point out the provisions of the particular wills, refer to the reasoning of the Court in the cases of *Turner vs. Withers*, 23 *Md.*, 42, 43, and *Hilleary vs. Hilleary*, 26 *Md.*, 287, 288, and *Dallam vs. Dallam*, 7 *H. & J.*, 247 to 250, and *Taylor vs. Watson*, 35 *Md.*, 524.

Being satisfied the limitation over to Woollen was good and took effect, the order appealed from must be reversed, as it makes a different disposition of the funds arising from the proceeds of a sale of part of the real estate which passed under this will, from that which the construction we have adopted would give to them. The costs both in the Court below and in this Court must be paid out of the fund.

<div style="text-align:right"><em>Order reversed,<br>and cause remanded.</em></div>

(Decided 2nd July, 1873.)