Demill *vs.* Reid. *et al.*

Nina C. Demill, and Laura O. Demill, an infant by her guardian Richard Demill *vs.* Andrew Reid, James Mackubin and the German Savings Bank of Baltimore.

*Construction of Will—Contingent remainder with Double aspect—Children.*

A testator devised certain real estate to his son in trust, for the use and benefit of his grandson during the term of his natural life, and from and immediately after the decease of said grandson, then in trust to the child or children of such grandson if he should leave any. But in case such grandson should depart this life without leaving a child or descendant thereof living at the time of his death, or in case he should have a child, children or descendants of the same living at the time of his death, and such child, children, descendant and descendants should subsequently depart this life under lawful age, and without issue living at the time of his, her or their decease, then to the "children" of the testator's son in fee. HELD:

1st. That the will created a contingent remainder with a double aspect, and not an executory devise.

2nd. That the word "children" of the testator's son, did not include the issue of a child in being at the death of the testator, but who died before the happening of the contingency upon which the remainder in fee to such children took effect or vested.

Where there is an ultimate limitation upon a contingency to a class of persons plainly described, and there are persons answering the description *in esse* when the contingency happens, they alone can take.

APPEAL from the Circuit Court of Baltimore City.

This was a special case stated under Rule 47 of General Rules for the regulation of Pleading and Practice in Equity, to obtain the construction of the sixth item or clause of the will of John Willett, the material part of which is set out in the opinion of this Court. The Court below (WRIGHT, J.) decreed that the plaintiffs, Nina C. Demill and Laura O. Demill, daughters of Emily M. Demill, who was a daughter of Henry J. Willett, and died before her father, had no right, title or interest in the lots of ground, ground rents and reversions mentioned in the said sixth clause of the will of John Willett. From this decree the present appeal was taken.

The cause was argued before ALVEY, C. J., MILLER, ROBINSON, IRVING, BRYAN, and McSHERRY, J.

*W. A. Hammond,* and *Jno. J. Donaldson,* for the appellants.

It is submitted that the opinion of the Circuit Court is founded on the following fallacies: 1st, that there is any distinction between contingent remainders and other executory contingent estates given to a class, as to their transmissibility; 2nd, that the happening of the contingency excludes the representatives of those dying before it.

The rules as to the transmissibility of all future contingent estates are the same, whether they be by the way of contingent remainder, executory devise, conditional limitation, shifting or springing use, &c. *Jones vs. Roe,* 3 *T. R.,* 88; *S. C.,* 1 *H. Bl.,* 30; *Fearne (Ed. 1843,) sec.* 742-8; 4 *Kent Com.,* 261; *Challis R. P.,* 58, 142; *Hambleton vs. Darrington,* 36 *Md.,* 435; *Barnes vs. Allen,* 1 *Bro. C. C.,* 181; 2 *Cr. Dig.,* *331; 6 *Cr. Dig.,* *426; *Roe vs. Griffiths,* 1 *W. Bl.,* 606; *Snively vs. Beavans,* 1 *Md.,* 208; *Cooke vs. Husbands,* 11 *Md.,* 492; *Buck vs. Lantz,* 49 *Md.,* 444; *Budd vs. State,* 22 *Md.,* 48.

Demill *vs.* Reid, *et al.*

Where there is a future contingent executory interest, it goes to those who are in being at the happening of the contingency, including the representatives of those who have died before, *unless survivorship is made a part of the description.* *In re Creswell, L. R.,* 24 *Ch. D.,* 102; *Winslow vs. Goodwin,* 7 *Metc.,* 363; *Gardner vs. Hooper,* 3 *Gray,* 398; *Dunn vs. Sargeant,* 101 *Mass.,* 336; *Merriam vs. Simonds,* 121 *Mass.,* 198, 202; *Minot vs. Tappan,* 122 *Mass.,* 535; *Daniels vs. Eldredge,* 125 *Mass.,* 536; *Belcher vs. Burnett,* 126 *Mass.,* 230; *Putnam vs. Story,* 132 *Mass.,* 205; *Whipple vs. Fairchild,* 139 *Mass.,* 263; *Bond's Appeal,* 31 *Conn.,* 183.

Those who are excluded are those who come into existence after the happening of the contingency. This is the point decided by the cases of *Godfrey vs. Davis,* 6 *Ves. Jr.,* 49, and *Devisme vs. Mello,* 1 *Brown C. C.,* 537, and so the whole line of cases relied on by the defendants below. None of them touch the point of this case, as in none of them arose the question of the interest of representatives of a deceased member of the class.

According to the construction of the defendants, Reid and the Savings Bank, followed by the Court, the use limited to Henry J. Willett's children was on a double contingency, viz:—1. Death of John Willett Belt without children, &c.; 2. survival of that event.

The correctness of this theory can be easily tested. By striking out the first contingency it will be found that the estate becomes a vested one at once; *ergo*— there is no second contingency.

Had there been no children of Henry J. Willett in existence at the testator's death, there would have been such a second contingency, but this would have come to an end the instant a child was born to him, if before the first contingency fell in. *Driver vs. Frank,* 3 *M. & S.,* 25, 32, 37; *Carver vs. Jackson,* 4 *Peters,* 1, 90; *Doe vs. Provost,* 4 *Johns.,* 61.

It is to be noticed that Henry J. Willett died in 1877, so that then the class was in one sense ascertained, as of course no children of his could come into existence after that event. It is well settled that the proper construction of a limitation may be changed by matter *ex post facto.* 6 *Cr. Dig.*, 418.

The construction contended for by the appellants is in accord with the whole scheme of the will, and carries out the testator's general intention.

The rule that "children" shall not include "descendants of deceased children" is deemed by the Courts a harsh one, to be avoided at every favorable opportunity for a contrary construction. 4 *Kent Com.*, 345, 349, and cases cited. Just as equity will use all ingenuity in construing expressions so as to include all children, although it may be apparent that only those in existence when the will was made were intended. *Conn vs. Conn*, 1 *Md. Ch. Dec.*, 214.

In *Prowitt vs. Rodman*, 37 *N. Y.*, 42, HUNT, J., lays down two propositions. 1. That the term "children" may include issue, however remote, and will be held so to include whenever the reason of the thing demands it. 2. In case of a contingent future gift to the "children" of a first taker, followed by a limitation over for want of such, the presumption is in favor of the first taker's posterity to his remoter descendants in preference to the donee over. *Dunlap vs. Shreeve's Ex'rs*, 2 *Dunlap*, 340; *Taylor vs. Watson*, 35 *Md.*, 519.

Turning, now, to the will in question, what do we find? First, a devise, and the very one in question, to John Willett Belt for life, with remainder to "the child or children of the said John Willett Belt, by him lawfully begotten." Could language be stronger to limit the testator's apparent intention to the children only? For certainly J. W. Belt's grand-children, would, in no sense, have been "children by him lawfully begotten."

And yet the testator goes on to say: "But in case the said John Willett Belt should depart this life without leaving a child or descendant thereof living at the time of his death, or in case," &c., then the ultimate remainder to the children of Henry J. Willett follows. This, and the same identical language in the fifth and seventh clauses of the will, shows conclusively that in the mind of the testator even "children" by a man "lawfully begotten," meant all his descendants or "issue." And yet the testator in mentioning the "children" of Henry J. Willett, if possible, widens the signification of the term, by omitting the qualifying words "by him lawfully begotten." "Words occurring more than once in a will shall be presumed to be used always in the same sense, unless a contrary meaning appear by the context, or unless the words be applied to a different subject. And upon the same principle where the testator uses an additional word or phrase he shall be presumed to have an additional meaning." *Greenleaf, Cruise's Dig.*, *VI*, 168.

Again in the third clause, he provides, that certain property shall go to the wife of his son Charles during the life of his said son, and after his death, to "become the property of the child or children of the said Charles S. Willett by him lawfully begotten, their heirs and assigns, if more than one, to be equally divided between them, share and share alike." And yet can it be doubted, that the testator intended that Charles' share of his estate should go to his (Charles') "issue" or "descendants," in the absence of "children," precisely in the same manner as the limitations are made to the "descendants" of Albert Hornsby in the fifth, and of John W. Belt in the sixth and seventh clauses? Suppose one of Charles' children had predeceased the testator, leaving a child. The case would then be precisely that of *Taylor vs. Watson*, 35 *Md.*, 519. The word

"children" would be construed to mean "issue" and the grand-child would take the share of its deceased parent. Can any other construction then be given to the same word, used in identically the same connection and in reference to the same subject-matter, in the sixth clause? *Osborne vs. McTavish*, 40 *Md.*, 186.

And in the fourth clause a contingent remainder is given to the children of Henry J. Willett, in practically the same words, showing that the testator recognized no difference between the two kinds of remainders.

That the testator used the word "children" in the comprehensive sense, which has been indicated through-. out the will, is further shown by the fact that when he wishes to limit its signification, he uses apt words for the purpose ; as in the concluding portion of the fifth clause where he devises certain property to the "children, who shall be living at the time of my (his) death," of said Henry and Charles.

The construction of the appellees would be equivalent to introducing the word "surviving" before "children" in the sixth clause. But even where the bequest was to "be equally divided amongst my surviving children" by name, Judge PARKER, in the case of *Hansford vs. Elliott*, 9 *Leigh*, 79, which is quoted with approval in *Branson vs. Hill*, 31 *Md.*, 189, said: "The bequest is to children specifically named. I cannot believe the testator meant to make a tontine among them, and if all but one died before the mother, for that one to take all in exclusion of grand-children or their descendants."

It is a familiar principle that, "of two modes of construction, that is to be preferred which will prevent a total intestacy."—*Jarman's Rules*. Now, using the language of ROBINSON, J., in *Branson vs. Hill*, 31 *Md.*, 190, *mutatis mutandis* "suppose all the children of Henry had died, leaving children, before the happening of the contingency ; if the construction insisted upon

Demill *vs.* Reid, *et al.*

by the defendants be correct, it would follow that none of them would be entitled to take in remainder. We should thus have a case of intestacy, where it is plain no intestacy was intended. \* \* \* Could a construction be more repugnant to the intention of the testator, which speaks to us from the four corners of the will?"

*Harry M. Benzinger*, and *Arthur Geo. Brown*, for the appellees.

The word *children* in its ordinary and popular signification, means immediate offspring, and such in general is its legal construction. *Stump vs. Jordan*, 54 *Md.*, 619, 628 ; 2 *Jarman on Wills*, (*Randolph & Talcott's Ed.*,) *top page* 690, *et seq.*

The ordinary, popular and legal sense of the word children embraces only the first generation of offspring, and for it to be extended further, there must either be something in the context showing that a larger signification is intended, or the person using it must know that there is neither then, nor can afterwards be, any person to whom the term can be applied in an appropriate sense. *Willis vs. Jenkins*, 30 *Georgia*, 167.

The word children, does not ordinarily denote grandchildren, and is never so construed, except in cases where it is indispensably necessary to effectuate the obvious intent of the testator. *Sheets, et ux. vs. Grubbs, Ex'r*, 4 *Metcalf*, (*Ky.*,) 339. Nothing is clearer in the law than that under an ultimate limitation upon a contingency to a class of persons by a clear and certain designation, none but the persons in being at the time when the contingency occurs, and then answering to the description, can take. *Godfrey vs. Davis*, 6 *Vesey, Jr.*, 48 ; *Devisme vs. Mello*, 1 *Brown C. C.*, 539 ; *Adams vs. Beekman*, 1 *Paige*, 633 ; *Cutter vs. Doughty*, 23 *Wendell*, 517.

Sir WILLIAM GRANT said in the case of *Lord Orford vs. Churchill*, 3 *Vesey & B.*, 59, "I never knew an instance,

where there were children, to answer the proper des-
cription, that grand-children were permitted to share
along with them." See also *Morris vs. Owen,* 2 *Call's R.,*
438; *Wigram on Wills,* 11–14; *Mordecai vs. Boylan,* 6
*Jones' Eq.,* 365; *Boylan vs. Boylan, Phillips' Eq., N. C.,*
160; *Crooke vs. Brookling,* 2 *Vernon,* 106; *Loveday vs.
Hopkins, Ambler's Rep.,* 273.

Another contention, made below for appellants, was
that "the whole will indicates that the testator intended
that his bounty should flow in the broadest stream
among all his descendants," and that, therefore, Henry
J. Willett's grand-children should be included in the
provision made in favor of his children by the sixth
item.

An examination of the unequal and widely different
provisions and dispositions of property made in and by
the items of the will, from one to nine inclusive, will
furnish a sufficient answer to this suggestion, and show
that it is entirely fanciful.

A strenuous effort was made in the Court below to
show that the provision referred to in the sixth item is
an executory devise.

It is believed that a reference to the opinion of the
learned Judge of the Circuit Court together with the au-
thorities which are there cited and commented upon by
him, will furnish a complete answer to that argument.

The provision in question is neither a springing nor
a shifting use; nor an executory interest of any kind, but
is a contingent remainder.

In *Williams on Real Property,* it is said, at page 289,
marg.: "Contingent remainders are future estates,
which, as we have seen, were, until recently, continually
liable, in law, until they actually existed *as estates,* to be
destroyed altogether; executory interests, on the other
hand, are future estates, which in their nature are in-
destructible. They arise, when their time comes, as of

Demill *vs.* Reid, *et al.*

their own inherent strength; they depend not for protection on any prior estates, but on the contrary, they themselves often put an end to any prior estates which may be subsisting."

At page 290, marg.: "Executory interests created under the Statute of Uses, are called *springing or shifting uses.*" At page 292, marg.: "From the above examples, an idea may be formed of the shifts and devices which can now be effected in settlements of land, by means of springing and shifting uses. By means of a use, a future estate may be made to spring up with certainty at a given time. It may be thought, therefore, that contingent remainders, having until recently been destructible, would never have been made use of in modern conveyancing, but that everything would have been made to assume the shape of an executory interest. This, however, is not the case. For, in many instances, future estates are necessarily required to wait for the regular expiration of those which precede them; and when this is the case, no art or device can prevent such estates from being what they are, contingent remainders." See also 1 *Fearne on Remainders*, 373.

Notwithstanding the unwillingness of the appellants to admit that the provision in question is a contingent remainder, the appellees contend that such it is, and that "no art or device can prevent" it from being a contingent remainder, or make it anything else.

The disputed provision of the will in the case of *Doe d. Herbert vs. Selby*, 2 *Barn. & Cress.*, 926, was to all intents and purposes identical with this, as a comparison will show. That was a case which fell under the class which has been defined as follows: "However, we are to remember, that although a fee cannot, in conveyances at common law, be mounted on a fee, yet two or more several contingent fees may be limited merely as substitutes or alternatives, one for the other, and not to interfere; but

so that one only take effect, and every subsequent limita-
tion by a disposition substituted in the room of the
former, if the former should fail of effect.'' *Fearne,*
373.

"Two or more contingent remainders in fee may be
limited as substitutes or alternatives, one for the other,
so that one only take effect, and every subsequent limi-
tation be substituted for the former if it should fail of
effect.'' *Leake, Digest of the Law of Property in Land,*
338.

Those principles have been established and applied by
this Court, notably in *Clagett vs. Worthington,* 3 *Gill,* 83,
91, 92, 93, and *Woollen, Trustee vs. Frick & Golder, Ex'rs,*
38 *Md.,* 428. See also 2 *Jarman on Wills,* (*Randolph &
Talcott's Ed.,*) page 489; *Waddell vs. Rattew,* 5 *Rawle,* 231.

In this case the first contingent remainder was as
follows: ''And from and immediately after the decease
of the said John Willett Belt, then in trust, that the said
principal estate and property shall go to, and become the
property of the child or children of the said John Willett
Belt, by him lawfully begotten, if any, their heirs, exe-
cutors, administrators and assigns if more than one, to
be equally divided between them as tenants in common.''

The second, under which the appellants claim was a
substituted, alternative contingent remainder, which was
as follows: ''But in case the said John Willett Belt
should depart this life, without leaving a child or de-
scendant thereof, living at the time of his death.'' * * *
''then in trust that the said principal estate and property
shall go to, and become the property of the children of
my said son, Henry J. Willett, their heirs and assigns,
to be equally divided between them as tenants in com-
mon.''

There was a third provision, based upon the possibility
that John Willett Belt might leave a child or descend-
ants living at the time of his death, who might all sub-

sequently die under age, and without issue living at the time of his, her or their decease which could only have taken effect as an executory devise.

Therefore, in the nature of the case, and under the authorities cited, only those *children* of Henry J. Willett, who answered that description, and were in existence at the time when the contingency under which they claim took effect, are entitled to take under it; and the appellants must be excluded.

Finally, and as a last resort, appellants say, even if the provision in question is a contingent remainder, and although Mrs. Demill, their mother, did not survive the contingency, and therefore took nothing under it, nevertheless, while she was living, there was a *possibility* that John Willett Belt might have no children, or that if he had children, they might all die in their father's life-time, leaving no descendants, *and* after those possibilities had been exhausted, and subject to them, there was *a further possibility* that Mrs. Demill might survive John Willett Belt; and although she did not survive him, (but died in 1874, while he lived until 1886,) still, while she did live, that *possibility of a possibility* was coupled with an interest in Mrs. Demill, and was transmissible by descent, and was devisable and assignable by her; and in support of this contention, appellants rely upon the principle defined in 4 *Kent's Com.*, (13*th Ed.*,) 261, 262, and recognized by this Court in several cases.

It is submitted that that doctrine has no application, and in its nature can have none, to the facts of this case; and that an attempt so to apply it would be incorrect in principle, and would defeat the manifest intention of the testator. *Woollen, Trustee vs. Frick and Golder, Ex'rs,* 38 *Md.,* 428.

Where, as in this case, the ultimate contingent remainder is limited to a *class,* to be ascertained, and not to an individual named, the "possibilities," "are not

then possibilities coupled with an interest, and they cannot be either devised or descend at common law." 4 *Kent Com.*, 262.

In Massachusetts, and New York and also in England, there are statutory provisions, referred to in the notes to Kent, which have materially affected the course of their judicial decisions. See *Winslow vs. Goodwin*, 7 *Metc.*, (*Mass.*,) 363, 379, 383.

The case of *Hambleton, et al. vs. Darrington, et al.*, 36 *Md.*, 434, is an example of that limited class of cases in which *an individual designated* has been held, under similar provisions to have taken a possibility coupled with an interest. In such cases the person named must take in any and every event, in order to give any effect to the testator's defined wishes. Not so here, or in any case where such a provision is in favor of a class, to be ascertained. *Beach on Wills, sec. 298, page 498, and cases in note 2.*

While it is true that equity follows the law in the limitation of its estates, and permits an equitable or trust estate to be disposed of by way of particular estate and remainder, in the same manner as an estate at law, (*Williams, Real Property, 5th Ed.*, 285,) nevertheless, it is submitted that the fact that the legal estate was by this testator vested in a trustee, his heirs, executors and administrators to be held until after certain contingencies happened; and, if and when they did happen, then in trust that the property should "be equally divided between" the children of Henry J. Willett, as tenants in common, tends strongly to confirm the conclusions of the learned Court below, and the contentions of the appellees here. *Calvert vs. Eden, et al.*, 2 *H. & McH.*, 279, 336, 337; 1 *Fearne*, 364; *Moorhouse vs. Wainhouse*, 1 *Blackstone's Rep.*, 638; *Winslow vs. Goodwin*, 7 *Metc.*, 379.

Demill *vs.* Reid, *et al.*

MILLER, J., delivered the opinion of the Court.

This appeal brings before us for construction the sixth item or clause of the will of John Willett, which was executed in 1857.

By this clause the testator devised certain real estate to his son, Henry J. Willett, "to hold the same unto the said Henry J. Willett, his heirs, executors and administrators, in trust and confidence nevertheless, and to and for and upon the uses, trusts and purposes following, that is to say: In trust for the use and benefit of my grandson, John Willett Belt, during the term of his natural life, so that he, during that period, be permitted and suffered to have and enjoy the said trust property and premises, and the rents, issues and profits thereof to receive, take and apply to his own use and benefit; and from and immediately after the decease of the said John Willett Belt, then in trust that the said principal estate and property shall go to and become the property of the child or children of the said John Willett Belt, by him lawfully begotten, if any, their heirs, executors, administrators and assigns, if more than one, to be equally divided between them as tenants in common. But in case the said John Willett Belt should depart this life, without leaving a child or descendant thereof living at the time of his death, or in case he should have a child, children or descendants of the same living at the time of his death, and such child, children, descendant, and descendants should all subsequently depart this life under lawful age, and without issue living at the time of his, her or their decease, then in trust that the said principal estate and property *shall go to and become the property of the children of my said son Henry J. Willett, their heirs and assigns, to be equally divided between them as tenants in common.*"

The testator died in October, 1860, and his son Henry J. Willett accepted the trust for the benefit of his grand-

son, John Willett Belt, who enjoyed the property during his life, and died in October, 1886, without leaving a child or descendant thereof living at the time of his death. The son, Henry J. Willett died in August, 1877, and had six children *three of whom are now living.* One died in 1875 intestate and leaving no descendants; another died in the life-time of her father, leaving an only child, who also died in the life-time of the said Henry J. Willett leaving no issue. The other, Mrs. Emily M. Demill died before her father in May, 1874, leaving *four daughters,* her only heirs-at-law, all of whom are now living. Upon this state of facts the question is, do these four daughters of Mrs. Demill take the interest in this property which their mother would have taken had she survived the life tenant, John Willett Belt, or does it all go to the three children of Henry J. Willett who did survive the life tenant?

As to the character of the estates thus created, we have no difficulty. It is a clearly established general rule in the contruction of wills that a limitation which may operate as a remainder shall not be construed an executory devise. Here there is first a life estate given to the grandson, Belt, and upon his death alternative contingent remainders in fee are limited, first, to the child or children of Belt, if he leaves any, which shall attain lawful age, or die before that time leaving issue, and failing this then to the children of the testator's son Henry. If Belt had left a child who attained the age of twenty-one, or died before that time leaving issue, the fee would have vested in such child or issue, and such vesting would forever have excluded any possible future interest in the children of Henry J. Willett. Their interest took effect only upon the failure of the preceding contingency. There are, therefore, here two contingent fees not limited to take effect the one upon or after the other, but the one to take effect to the entire

exclusion of the other, and the falling out of the contingencies is to decide which of the two is to take effect. It is a case illustrating the statement made by *Fearne*, 373: "However, we are to remember, that although a fee cannot, in conveyances at common law, be mounted on a fee, yet two or more several contingent fees may be limited merely as substitutes or alternatives one for the other, and not to interfere: but so that one only take effect, and every subsequent limitation be a disposition substituted in the room of the former, if the former should fail of effect. Thus in the above cited case of *Loddington vs. Kime*, it was held, that the first remainder was a contingent remainder in fee to the issue of A, and the remainder to B, was also a contingent fee, not contrary to, or in any degree derogatory from the effect of the former, but by way of substitution for it. And this sort of alternative limitation, was termed a contingency with a double aspect. For if A had issue male, the remainder was to vest in that issue in fee; but if A had no issue male, then it was to vest in B, in fee; and these were limitations of which the one was not expectant upon, and to take effect after the other, but were cotemporary; to commence from the same period, not indeed together, but the one to take effect in lieu of the other, if that failed." Other authorities to the same effect are the cases of *Clagett vs. Worthington*, 3 *Gill*, 83; *Woollen, Trustee vs. Frick and Golder, Ex'rs*, 38 *Md.*, 428; *Herbert vs. Selby*, 2 *Barn. & Cress.*, 927; *Waddell vs. Rattew*, 5 *Rawle*, 231.

As to the other question there is more difficulty, Mrs. Demill was one of the children of Henry J. Willett, was *in esse* at the death of John Willett the testator, but died before the happening of the contingency, which made the substituted contingent remainder in fee to the children of John Henry Willett take effect or vest. Did she take an interest which was transmissible to her

children? As a general rule a contingent remainder of inheritance is transmissible to the heirs of the *person* to whom it is limited, if such person chances to die before the contingency happens. *Fearne,* 364. Chancellor KENT states the rule thus: "It is settled that all contingent estates of inheritance, as well as springing and executory uses, and possibilities coupled with an interest, *where the person to take is certain,* are transmissible by descent, and are devisable and assignable." 4 *Kent,* 262. This doctrine is vigorously criticised by *Mr. Bingham* in his book on *Descents,* (*sec.* 6,) but it has been recognized by this Court in several cases, and we are, of course, bound by those decisions. The rule by its terms applies where the person to take is certain, that is, where an individual is named or definitely described as the party to take when the contingency happens; and of this the case of *Hambleton vs. Darrington,* 36 *Md.,* 435, affords an illustration. Of like character are the other Maryland cases to which reference has been made. *Snively vs. Beavans, et al.,* 1 *Md.,* 208; *Buck vs. Lantz,* 49 *Md.,* 444. Now does this rule apply to a case where there is a limitation by way of contingent remainder to *children* as a class, and where there are those of the class answering the description, and capable of taking at the time the contingency happens and the estate arises and becomes vested?

A large number of cases have been cited to sustain either side of this proposition, but we do not deem it necessary to refer to them at length, or to discuss the principles, or draw the distinctions on which they rest. We must look to the will before us, and keep in mind certain familiar rules applicable to the construction of all wills. Now the first object the testator had in view in constructing this clause of his will undoubtedly was to provide for his grandson and his children or descendants. This was his primary purpose, and there he sup-

Demill *vs.* Reid, *et al.*

posed the property would go. But should it so happen
that his grandson should leave no child or descendants,
then, and in that event, he said the property should go,
not to his own children or his own surviving children,
but "to the children of his son Henry." He describes
those who should take in that event, as he had a clear
right to do, and fixed the time at which the description
was to be applied. He had the clear right to do this,
and a Court has no right to put other words into his
will, or to place upon those he has used any other than
their usual and accepted meaning; and clearly not where
there is no necessity for doing so. The word "children"
does not ordinarily denote "grand-children," and is not
to be so construed, unless the will clearly manifests that
such was the intention of the testator. It is quite im-
possible to say in this case that the testator meant that
grand-children as well as children of his son should share
in the estate when the contingency which he had pre-
scribed fell out. Nor is there any necessity for putting
such a construction on his language, for there are chil-
dren here to take, and in such a case Sir WILLIAM GRANT
said, "I never knew an instance where there were chil-
dren to answer the proper description, that grand-children
were permitted to share along with them; although, where
there is a total want of children, grand-children have been
let in under a liberal construction of the word children."
*Orford vs. Churchill,* 3 *Ves. & Bea.,* 69. It seems to us
to be clear law, as well as good sense, that in a case like
this where there is an ultimate limitation upon a con-
tingency to a *class of persons* plainly described, and there
are persons answering the description *in esse* when the
contingency happens, they alone can take.

The Supreme Court of New Hampshire, in a very
well considered case, and after a careful review of the au-
thorities said: "The result, then, of the authorities, in
our opinion, is, that, if there be a bequest to one for life,

and then to the children of the testator, or the survivors of them, those children will take, who, at the death of the tenant for life, answer the description in the will, to the exclusion of the representatives of those who are then dead. This, we think, is the rule when the bequest is in these terms and nothing more; subject, of course, to be controlled by a manifestation in the will of a different intention." *Hill vs. Rockingham Bank*, 45 *N. H.*, 270. That case is a much stronger one than this, for there the limitation after the life estate was to the *testator's* living or surviving children, and if such words, as "living," "surviving" or "remaining" had been used in this will, it might possibly have opened the way for a reference of them to the children of the son living, surviving, or remaining at the death of the testator, which would have let in Mrs. Demill to a share or interest in this property. Again in *Turner vs. Withers*, 23 *Md.*, 18, a testator devised property to his son and four daughters for life, to be equally divided between them, and in case his son or either of his daughters should die leaving children or descendants living at the time of his death, his or her share should go to such child or descendants in fee; but, should either of them die without leaving any children or descendants alive at the time of his or her death, the share of the child so dying "shall be equally divided between my remaining children during the term of their natural lives." The son died shortly after the testator, without leaving children or descendants, and the four daughters then divided the estate between them. Then, Mary, one of the daughters died *leaving children;* then Margaret, another daughter, died without leaving children, and the question was, what became of Margaret's share. The two surviving sisters, children of the testator, claimed the whole of it, while the children of Mary, who were the grand-children of the testator claimed a share of it. The Court held, as here, that the remainder was limited with

a double aspect; that if Margaret left a child or descend-
ants alive at the time of her death then to them in fee,
but if she left none, (which was the contingency that
actually happened,) then the devise was to the remaining
children of the testator for life; and in reference to this
the Court said: "The parties taking the remainder take
by purchase as devisees under the will, and must *answer
the description* of the parties named as devisees, and it is
clear that no one can take *except a child* of the testator.
The children of Mary do not answer this description, and
cannot claim as devisees." So in this case we hold that
no one can take as devisee under this limitation except
those who were *children* of Henry J. Willett at the time
the contingency happened, and we find nothing in other
parts of the will to warrant the inference that the testa-
tor intended any thing else, nor any necessity for putting
a different construction on his language.

*Decree affirmed.*

(Decided 12th June, 1889.)