John H. Clagett, a. d. b. n. of John H. Beanes, *vs.* Walter B. C. Worthington, Trustee of M. Magruder.—*June,* 1845.

*B* devised to *M:* "my dwelling, and all the grounds, land, &c., attached thereto, to hold during the life of my brother *C,* for the use of my said brother during his natural life; and after his death, I devise the same to *M,* to hold in trust for the use of *P,* the grandson of my brother *C;* and in case the said *P should have issue of his body, lawfully begotten,* then I will and devise the same to *P* in fee; but in the *event of his dying without such issue,* I will that the same be sold by my executor, and the proceeds thereof, I devise as follows: *one-half* thereof to my nephew, *H,* and the *other half* to *M,* to hold during the life of my sister, in trust for her sole use; and at her death, the principal to be equally divided among her children."

The testator also devised to *M,* in trust for the use of *P,* one-fourth part of the proceeds of the residue of his property, *real, personal* and *mixed,* directed by his will to be sold; and also one-fourth part of his debts, requesting the trustee, *M,* to invest the same, and apply the interest thereof to the use of *P,* and in case he should *have issue of his body, lawfully begotten,* then the investments to be made over to *P;* and in *the event of his dying without issue of his body, lawfully begotten,* then one-third part thereof to *H;* one-third part to *C;* and one-third part to *M,* in trust for his sister, as before. Held;

The intention of the testator is apparent, that the one-third part of the debts and residue of his estate, devised in trust for his sister, should vest in his trustee, at the same time and upon the same contingencies with the moiety of the proceeds of sale of the real estate, mentioned in the first clause above recited.

The correct interpretation of the bequest, in relation to the debts and residue, depends upon the true construction of the devise of the real estate.

A trust estate for life is in the first instance given to *P.*

There is no limitation over of the property devised, (conceding that the life estate had been unincumbered by the trust,) to the heirs, or issue of the body of *P,* so as to let in the operation of the rule in *Shelly's* case.

The limitation over, after the trust estate to *P,* for life, is to himself in the event of his having issue.

Clagett, a. d. b. n. of Beanes, *vs.* Worthington, Trustee.—1845.

The limitations over to *H*, and the sister of the testator, were not made dependent upon *P's* fee, or to take effect upon its termination, by the happening of a contingency provided by the testator, for its duration.

The vesting of the fee in *P*, by his having children, put an end to the limitation over, to *H* and the sister of the testator, and left the estate of *P* absolute.

The limitation over in their favor was not intended to follow the fee, and to vest and be enjoyed only after its investiture, and contingent determination, but was intended as a substitute for the fee, in case of its never coming into being, according to the contingency provided for its creation.

The limitation in fee to *P*, cannot operate as a vested remainder, as its coming into existence, or vesting, depends on a contingency which may never happen, to wit, his having lawful issue.

It is good as a contingent remainder, because of the previously given particular estate for life, on which it depends, and which supports it. The happening of the contingency terminates the life estate in *P*, and creates a fee in its stead.

The non-occurrence of the contingency, and natural termination of the particular estate for life, by the death of *P*, gives effect to the substituted contingent remainder in fee, in favor of *H*, and the sister of the testator.

The vesting of the contingent remainder in fee to *P*, depending on the contingent termination of his life estate, by his *having* issue; whilst the substituted contingent remainder, in favor of *H* and the sister, can only take effect, or vest by the death of *P*, *without* having had lawful issue.

This kind of alternative limitation is termed, a contingency with a double aspect.

Where a testator intended that certain limitations over, both as to the realty and personalty, should take effect at the same time, and upon the same contingencies, this court having said, that *the failure of issue*, as to the realty, meant *without ever having had issue*, cannot hesitate to give the same construction to the same words in the limitation over, as to the personalty.

A party who seeks to recover in equity against one of the several sureties, in a trustee's bond, the whole amount of his claim against a defaulting trustee, must not only prove the insolvency of the principal in the bond, but of all the other co-securities.

The co-securities, or their representatives, should be parties to such a proceeding.

The fact that a surety in a trustee's bond, is also a distributee of the fund in his hands, will not authorize another distributee to require a court of equity to apply the portion of the fund due to the first distributee, in discharge of his obligation as surety, where the trustee is in default. The remedy for non-performance is at law.

A creditor of a distributee in chancery, claiming by petition, to be paid his debt out of a fund in court to be distributed, must show himself remediless at law ; or that he has some lien or title to the fund sought, which it is the duty of a court of equity to enforce.

This was an appeal from the court of chancery.

On the 2nd July 1833, *James A. Magruder*, and *Millicent*, his wife, filed their petition on the equity side of *Prince George's* county court, having reference to the will of *Wm. Beanes*, dated 24th September 1827, and the codicil thereto, dated 3rd July 1828, (a copy of the material parts of which will be found in the opinion of this court, post 89,) and alleging the death of the testator; *John R. Magruder; Colmore Beanes*, and *Philip Key*, without lawful issue; and also of the executors of said will, and praying the appointment of a trustee to make sale of the real estate of the said *William Beanes*.

The county court, on same day, appointed *John B. Brooke* a trustee, for that purpose, who gave bond in that character, made various sales, which were ratified, and on the 13th October 1835, an account was stated, showing sales to amount of $5284, of which sum *Millicent Magruder* was allowed $2475.40.

After this, *David Crawford*, trustee of *M. M.*, filed his petition, alleging that on the death of *John R. Magruder*, one of the executors, the fund in which *M. M.* was interested was paid over to *James A. Magruder*, a trustee for her, who gave bond, that he is insolvent, and had failed to distribute the fund he had received. The petition then prayed that the amount due her might be retained out of the proceeds of property of the testator decreed to be sold, and that the said *J. B. B.*, trustee, pay out of the fund in his hands, the amount which the petitioner is entitled to receive of *James A. Magruder*, of the fund held by him, as trustee for *Philip Key*, &c.

*James A. Magruder* was appointed trustee in the place of *John R. M.* 22nd April 1831, and gave bond as such, with *Philip Key, Colmore Beanes*, and *John H. Beanes* as his sureties.

On the 10th December 1835, an account was audited between the estate of *Philip Key*, deceased, with *James A. Magruder*, trustee, in which a balance of $4953.40 was awarded, one-third to the representatives of *Colmore Beanes*; one-third to the trustee of *Mrs. M. Magruder;* one-third to *John H. Beanes*; each, $1651.14. These were sums which had been invested in bonds.

At July 1837. The county court ordered that *John B. Brooke,* the trustee, retain in his hands, until the administrator of *John H. Beanes* answer her petition, the amount allowed to the said *J. H B.,* out of the proceeds of the property herein decreed to be sold, subject to the future order of the court.

*Thomas H. Clagett,* the *a. d. b. n.* of *John H. Beanes,* answered the petition of *D. C.,* and after admitting the various proceedings before referred to, and alleging his ignorance, how the said *James A. M.* had managed his trust, further alleged, that the bequest made to *John R. Magruder,* in trust for *Philip K.,* was not to be divided between *J. H. B., C. B.,* and *M. M.,* but that the trustee was to pay *M. M.* the interest accruing on her part, for her separate use during her life; and after her decease to pay the principal to her children, under an equal division, vested in the said *Philip K.* an absolute right or estate in said property, it being personal; that the limitation over to the said *M.* and her children, and to the said *C. B.* and *J. H. B.* was void. The answer denied that *J. H. B.* and *C. B.* died insolvent. That the remedy on the bond of *James A. M.* is at law. That the trustee's account must be first settled before the bond is liable, &c.

A commission was issued, and proof taken; in February 1838, the cause was removed to the court of chancery, where exceptions to the evidence, and sufficiency of the averments in the petition of the complainants were filed.

On the 16th November 1840, the Chancellor, (BLAND,) referred the case to the auditor with instructions.

On the 11th December 1841, the Chancellor, upon petition, appointed *Walter B. C. Worthington* trustee of *M. M.,* in the place of *David Crawford,* deceased, &c., and *John H. Clagett, a. d. b. n.* of *J. H. B.,* was made a party to the cause. Accounts were again stated. Account A allowed the appellee $2389.50, as due by the estate of *Philip Key,* in account with *J. A. M.* This balance was transferred to account B, balance in favor of appellee, $1951, as due from *J. A. M.* To these accounts the appellants excepted.

On the 12th May 1843, the Chancellor, (BLAND,) ratified those accounts, and ordered the trustee, *James A. Magruder,*

to apply the proceeds accordingly, &c., and that out of the dividends of the proceeds of sale of the real estate of *William Beanes*, deceased, made by *John B. Brooke*, and assigned to *John H. Beanes*, the said *J. B. B.* pay to the appellee the sum of $1951, with interest, &c., which said sums shall be held and applied by the said appellee, in trust, for the use of *M. M.*, during her natural life, and after her death, the said sum to be equally divided among her children, according to the will of *W. B*, deceased.

From this decree *John H. Clagett, a. d. b. n.* of *John H. Beanes*, prosecuted this appeal.

The cause was argued before ARCHER, C. J., DORSEY, and CHAMBÈRS, J.

By C. C. MAGRUDER and W. H. TUCK for the appellants, who insisted:—

1st. That *Millicent Magruder* had no interest in that part of the personal estate which was bequeathed in trust for *Philip Key*, and therefore no cause of action accrued to her trustee on the bond of *James A. Magruder*, as trustee of *Philip Key*.

2nd. If her trustee had any cause of action on the bond, his remedy was at law, it appearing that the sureties were solvent at the time of their death.

3rd. That *Millicent Magruder* has no claim to satisfaction out of the proceeds of the real estate, on the assumption that these several proceedings are to be treated as an entire and blended course of judicial proceedings, in the same court, in relation to the same subject. The will does not authorise the payment of this claim out of the real estate.

4th. That the character in which *Daniel Crawford* files his petition, is not sufficiently averred; nor does he shew how he was appointed trustee for *Mrs. Magruder*. The present trustee's, (*Worthington*,) appointment, if regular, does not cure these defects.

5th. That the petition does not make the heirs and executor, or administrator, of *Colmore Beanes*, nor the heirs of *John H. Beanes*, parties to the cause.

6th. That the third and fourth answers of *John B. Brooke* must be excluded, because the witness does not state facts; but his answers are argumentative and inferential.

7th. That the auditor's accounts, A and B, should have been rejected on the exceptions taken thereto by the appellant, and the same exceptions are relied on in this court.

8th. That if any thing was due the said petitioner, as trustee, the amount so due is shewn by account C, which should have been ratified, and the petitioner's exceptions thereto overruled.

By J. Johnson, for the appellee.

In affirmance of the order of the Chancellor, it will be insisted:—

1. That the limitation over to *John H. Beanes, Colmore Beanes,* and the trustee of *Millicent Magruder,* of the one-fourth of the residue of the testator's estate, after the death of *Philip Key,* was good.

2. That under all the circumstances of this case, and looking to the actual condition of the fund in controversy, the chancery court was competent to grant the relief prayed by the petition, filed by *Crawford,* as the trustee of *Millicent Magruder,* on the 11th of July 1837, and that the aid of the court was properly invoked in that form.

3. That all the proper parties are before the court; that no valid objection exists to the form in which the claim was presented by the petition, or to the title therein set forth; and that especially, the title of the present appellee is beyond question or dispute.

4. That the evidence excepted to by the appellee was inadmissible.

Dorsey, J., delivered the opinion of this court.

The codicil to the last will and testament of *William Beanes* contains the following devises, viz: "Whereas, by my said will, I do will and devise to *John Read Magruder,* my present dwelling, and all the grounds, garden, buildings and enclosures attached thereto; also the mill, meadows, and all the land attached to and adjoining the same, during the life of my brother,

*Colmore*, in trust, to receive and apply the profits thereof to his use and benefit: after his death, do will and devise the same to his grand-son, *Philip Key*, in fee simple, reserving the grave yard in the garden, which is to be kept up and in complete order by my executors. Now I do hereby revoke and annul the said clause or clauses, devise or devisees, and do will and devise as follows, to wit : I will and devise to *John Read Magruder*, *Sr.*, my dwelling, aforesaid, and all the grounds, garden, buildings and enclosures attached thereto, reserving the grave yard, in the garden, which is to be kept up and in complete order by my executors, who are, at all times, to be permitted to have free access to the same ; also the mill, meadows, and all the land attached to and adjoining the same, to hold the same during the life of my brother *Colmore*, in trust, to receive and apply the proceeds to the use and benefit of my said brother during his natural life; and after his death, I will and devise the said dwelling, grounds, garden, buildings and enclosures attached thereto; and the mill, meadows, and lands attached to and adjoining the same to *John Read Magruder*, *Sr.*, aforesaid, to hold the same in trust for the use and benefit of *Philip Key*, the grand-son of my brother, *Colmore*, and to receive and apply the profits thereof to his use and benefit; and in case the said *Philip Key* should have issue of his body lawfully begotten, then I will and devise the said dwelling, mill, &c., to the said *Philip Key*, in fee simple, but in the event of his dying without such issue, I will and direct that the same be sold by my surviving executor, &c., and the proceeds thereof I bequeath as follows: that is to say, one-half thereof to my nephew, *John H. Beanes*, and the other half to *John Read Magruder*, *Sr.*, aforesaid, to hold the same during the life of my sister, *Millicent Magruder*, in trust for her sole and separate use and benefit, &c.; and at her death the principal to be equally divided among her children. And whereas, also, by my said will, I did give and bequeath to *Philip Key*, aforesaid, one-fourth part of the residue of my property, real, personal, and mixed, directed by my said will to be sold; and, also, one-fourth part of my debts, which said legacy I do hereby also annul and revoke, and do give and bequeath to the said *John Read Ma_*

12    v.3

*gruder, Sr.,* in trust for the use and benefit of the said *Philip Key,* the said one-fourth part of the proceeds of the residue of the property, aforesaid; and also the one-fourth part of my debts, hereby requesting him to invest the same in stock, or loan it on good security, and apply the interest thereof to the use and benefit of *Philip Key,* aforesaid, and in case he should have issue of his body lawfully begotten, then the stock or bonds, or other securities in which the said investment may have been made, to be made over and transferred to the said *Philip Key;* and in the event of the said *Philip Key* dying without issue of his body lawfully begotten, then I give and bequeath one-third part thereof to my nephew, *John H. Beanes;* other third part, I give and bequeath to my brother, *Colmore Beanes;* and the other third part I give and bequeath to the said *John Read Magruder, Sr.,* to hold the same in trust for the sole and separate use and benefit of my sister, *Millicent Magruder,* during her life, hereby requesting the said trustee to apply the interest thereof, during her life, to her sole and separate use and benefit; and at her death, to divide the principal equally among her children."

On reading the herein before recited clause of the codicil, we think the intention of the testator is apparent, that the one-third part of the debts and residue of the testator's estate, bequeathed in trust for *Millicent Magruder,* should vest in her trustee at the same time, and upon the same contingencies, with the moiety of the proceeds of the sale of the real estate mentioned in the preceding part of the said clause.   Such intention being conceded, it is the duty of the court to carry it into effect, if not inconsistent with some unbending rule of law.   In order, therefore, to arrive at a correct interpretation of the bequest in relation to the residue, &c., it is proper to ascertain the true construction of the devise of the real estate disposed of in the preceding part of this section of the codicil.   That a trust estate, for life only, is in the first instance given to *Philip Key,* cannot be denied.   That there is no limitation over of the property devised, (conceding that the life estate had been unincumbered by the trust,) to the heirs or issue of the body of *Philip Key,* so as to let in the operation of the rule in *Shelly's* case, is equally undeniable.   The limitation over, after the trust estate to him

Clagett, a. d. b. n. of Beanes, *vs.* Worthington, Trustee.—1845.

for life, is to *Philip Key*, himself, in fee simple, in the event of his having issue. The superadded limitation over, in favor of *John H. Beanes* and *Millicent Magruder*, was not made dependent upon this fee simple estate, or to take effect upon its termination, by the happening of the contingency supposed to have been provided, in the codicil, for its duration. On the contrary, the vesting of the fee simple estate in *Philip Key*, by his having children, put an end to the limitation over, in favour of *John H. Beanes* and *Millicent Magruder*, and left the estate of *Key* absolute, and exempt from all contingencies for its determination, as far as the codicil of the testator was concerned. The limitation over, in favor of *John H. Beanes* and *Millicent Magruder* was intended not to follow the fee simple estate, and to vest and be enjoyed only after its investiture and contingent determination, but was intended as a substitute for the fee simple estate, in case of its never coming into being, according to the contingency provided for its creation.

Assuming this to be a correct view of the intention of the testator, let us see what is the character of the estates, created by this codicil, and how far, according to the established principles of law, applicable to such subjects, this intention of the testator can be carried into effect. In *Hoxton and wife's lessee vs. Archer and others*, 3 *Gill and John.*, 199, this court say "it is a general rule, in the construction of wills, that a limitation, which may operate as a remainder, shall not be construed an executory devise." And this is but the assertion of a hornbook principle of the law of *England*. The limitation in fee simple to *Philip Key*, cannot operate as a vested remainder as its coming into existence, or vesting, depends on a contingency which may never happen, to wit: *Philip Key's* having lawful issue. It is good as a contingent remainder, because of the previously given particular estate for life, on which it depends, and which supports it. The happening of the contingency terminates the life estate in *Philip Key*, and creates a fee simple in its stead And the non-occurrence of the contingency, and natural termination of the particular estate for life, by the death of *Philip Key*, gives effect to the substituted contingent remainder in fee, in favor of *John H. Beanes* and *Millicent*

Clagett, a. d. b. n. of Beanes, *vs.* Worthington, Trustee.—1845.

*Magruder*, and causes it to vest.    The vesting of the contingent remainder in fee to *Philip Key*, depending on the contingent termination of his life estate, by his having issue, whilst the substituted contingent remainder, in favour of *John H. Beanes* and *Millicent Magruder*, could only take effect, or vest, by the natural expiration of the life estate; that is, by the death of *Philip Key*, without having had lawful issue.    And this kind of alternative limitation is termed a contingency with a double aspect.    The interpretation we have given of this first part of the testator's codicil, is in accordance with the doctrine to be found in *Fearne* on contingent remainders, p. 373, where it is stated, " that although a fee cannot, in conveyances at common law, be mounted on a fee, yet two or more several contingent fees may be limited merely as substitutes or alternatives, one for the other, and not to interfere, but so that one, only, take effect, and every substituted limitation be a disposition substituted in the room of the former, if the former should fail to take effect."

Having, as we suppose, ascertained what, according to the rules of law, was the intention of the testator in the devise made by him, in favor of *John H. Beanes* and *Millicent Magruder*, of the real estate mentioned in the first part of his codicil; and having assumed, what we think cannot be denied, that the testator intended that his bequest, in their favor, of the residue of his estate and debts should take effect at the same time, and upon the same contingences that are applicable to the realty; let us see, as this bequest of the residue, &c., is to be regarded as a disposition of personalty, how far the intention of the testator, in relation to it, can be effectuated according to the established rules of law applicable to such subjects.

According to the old doctrines of the common law, a gift or grant of chattels for life, vested the absolute property in the donee or grantee; and a bequest of them by will for life, "amounted to so absolute a gift as to invalidate any further limitation after the first legatees death,"    But in note (E.,) to *Fearne Con. Rem.*, 402, it is stated, that "in personal property, under which both chattels real and chattels personal are included, there cannot be a remainder in the strict sense of the word; and therefore,

every future bequest of personal property, whether it be pre-
ceded or not preceded by a particular bequest, or limited on a
certain or an uncertain event, is an executory bequest, and falls
under the rules by which that mode of limitation is regarded."
So 2 *Rop. on Leg,*, 351, states, that "although the law does
not allow of limitations of personal estate by way of remainder,
in the proper use of that term, yet by executory bequest or trust,
interest in the nature of remainders may be created by will or
deed." And that the same effect would be given to a limita-
tion over in a deed for a chattel, may fairly be inferred from
the case of *Johnson vs. Negro Lish.*, 4 *H. & J.*, 441. "In
dispositions of personal property, the courts generally incline
to the construing a limitation after a dying without issue, to
mean a dying without issue at the death of the first legatee, in
order to support, if they can, the limitation over; yet, in rela-
tion to real estate, the construction is generally otherwise."
See the case, *Newton et al. vs. Griffith et al.*, 1 *H. & G.*, 111;
and in *Biscoe vs. Biscoe*, 6 *Gill & John.*, 232, this court have
said, that in "relation to executory bequests of personal pro-
perty, dependent upon a dying without lawful heir, or leaving
issue, &c., the language of the will may be restricted to mean a
dying without issue living at the death of the taker, or ano-
ther person in *esse*, by any clause or circumstance in the will
that can indicate such intention in the testator; and, in order
to support the limitation over, the courts, in such cases, gene-
rally incline to lay hold of any expression or circumstance in
the will that seems to afford a ground for such a construction."
And such is the inclination of the courts to give effect to execu-
tory bequests of personalty, that where in the same clause in
the same will, there has been a limitation over, of real and
personal property, after a failure of issue, they have held the
limitation over, as to the personalty, good, as not being too re-
mote, whilst the same limitation over, as to the realty, has
been held to be void, on the ground of its being too remote.
Under the influence of such adjudications, and with the
assumption we have made, that the testator intended that the
limitations over, both as to the realty and the personalty, should
take effect at the same time, and upon the same contingen-

cies, how can this court, after having said that the failure of issue, as to the realty, meant "without ever having had issue," hesitate to give the same construction to the same words in the limitation over, as to the personalty?

Assuming then, that *John H. Beanes*, or he who represents him, is entitled to the fund sought to be reached in the present proceeding, and that the trustee of *Millicent Magruder* is entitled to the sum bequeathed to her under the residuary clause of the testator's codicil, the remaining enquiries are, has he shewn himself entitled to recover it, under the proceedings now before us? And if so, to what amount is the recovery to be had?

The opinion we have formed upon the first of these enquiries superseded the necessity of our consideration of the second, and also our determination of a large proportion of the numerous questions which were raised and discussed in the trial of this cause.

To entitle a party seeking to recover in a court of equity, against one of several sureties in a trustee's bond, the whole amount of his claim against the defaulting trustee, he must prove not only the insolvency of the principal in the bond, but of all the other co-securities. In the record before us there is no evidence to shew, that *Philip Key*, one of the securities, died insolvent, or that his estate in the hands of his representatives is not abundantly sufficient to meet all liabilities against him, in virtue of his suretyship. Nor have his representatives been made a party to this proceeding of the trustee of *Millicent Magruder*, nor have they had any opportunity of answering his petition. The order of the chancellor, appealed from, is erroneous upon this ground, if exempt from the many other errors which have been imputed to it. But apart from this objection the whole proceeding on the part of the trustee is clearly erroneous, upon another ground: a court of chancery has no power to grant the relief prayed for under the circumstances existing in this case; it has no such jurisdiction over the subject matter as would warrant its granting the relief which has been prayed.

In *Richardson vs. Jones,* 3 *Gill & John.*, 163, where an effort was made to compel a purchaser and his sureties under a chancery sale to the former, to bring into court the purchase money, this court determined, that "when a bond is given to the trustee for the purchase money, under an order of sale from chancery, requiring a bond to be given, and the sale has been ratified, the purchaser and his sureties cannot be compelled to pay the bond in a summary way, by an order from chancery. This constitutes a legal contract to be enforced at law." And in a like case of *Boteler and Belt vs. Brookes,* 7 *G. & J*, 143, this court said "the sureties of such a trustee have no official duties to perform, assume no responsibility to the court, but, in general, enter into a merely pure, legal contract of suretyship, incapable of coercion, except through the medium of the appropriate forum, for the enforcement of such contracts—a legal tribunal." The same may be emphatically said of the suretyship now in question before us; and the condition of the surety is in no wise changed by the simple fact, that he is a distributee, or entitled to a sum of money to be paid over to him, under the order of the chancery court. That fact, of itself, gives to the chancery court no authority to enforce his compliance with his mere legal liabilities. The remedy for their non-performance, if attainable there, must be sought in a court of law. As regards the jurisdiction acquired by the chancery court, in consequence of there being a fund there distributable and payable to him, over whom the jurisdiction is attempted to be exercised, there is no distinction between a surety, and any other debtor thus entitled. And surely it will not be contended, that the mere circumstance of a debtor being entitled to fund in chancery, is to disfranchise him of his invaluable common law right of contesting before a jury of his country, all legal claims which his creditors may prefer against him. The establishment of such a doctrine is the necessary result of giving to the trustee of *Millicent Magruder* the relief he has sought in the proceedings before us.

It is true, that where, in a suit in chancery, there is a fund in court for distribution, a person, not a party to the suit, (if all the necessary parties are before the court,) may, in the sum-

mary way of petition, assert his right to the whole, or any portion of the fund. But what must he shew to entitle himself to the relief he seeks? simply (as here,) that he is, at law, a creditor of one of the distributees of the fund? Assuredly not. If he thus claims, as a creditor of a distributee, he must shew himself remediless at law, or that he has some lien or title to the fund sought, which it is the duty of a court of equity to enforce. The trustee of *Millicent Magruder* has shewn himself in no such predicament; he has no such claims to the interposition of a court of equity: his claim is strictly a legal one; he can obtain the full benefit of it at law, and there he must pursue it. The estate of *John H. Beanes*, in the hands of his representatives, has been proved to be abundantly sufficient to meet it.

The order of the chancellor, of the 12th of May 1843, appealed from in this case, is reversed with costs.

ORDER REVERSED WITH COSTS.