## ISABEL R. THOM ET AL. vs. DeCOURCY W. THOM.

*Construction of a Deed of Trust and of a Will—Execution of Power of Appointment—Alternative Contingent Remainder to Heirs of Grantor Upon Death of Beneficiary Without Issue—Directing Sale of Land to be Made with Consent of Orphans' Court—Election Under a Will.*

When a deed conveying property in trust for the grantor's daughter for life, with the remainder to her children, or in another event to the grantor, etc., provides as an alternative contingent remainder, that upon her death without leaving descendants, the property shall be held in trust for such persons as would by the now existing law of Maryland, be the heirs-at-law of the grantor, then upon the happening of that contingency, the persons who take are to be ascertained as of the time of the death of the daughter without issue, and only those are entitled to take who are then *in esse* and are heirs of the grantor.

When a will provides that an estate held in trust can be sold for purposes of re-investment when the consent of the Orphans' Court of the county to such sale is given, the condition is void because the Orphans' Court is without jurisdiction to act in such matter.

In 1853 an estate was conveyed to trustees for the benefit of the grantor's daughter Clintonia and her husband, and the survivor, for their lives, with power to convey or devise the estate among their children; in default of the execution of the power then in trust for the children of Clintonia; if she died without issue, then in trust for the grantor for life, with power to devise the same to his children; if no dispostion of the estate be made by either the grantor or his wife, then in trust for such persons as under the then existing laws of Maryland would be the heirs-at-law of the grantor. In the following year the grantor made his will by which he devised the residue of his estate, in trust for the benefit of his three daughters, and provided that Clintonia and her representatives "shall not be entitled to any portion of my estate until she has been charged with the sum of $35,000 which I hereby assess as the value of the property" advanced to her by the deed of trust. The testator died in 1864 and Clintonia died in 1902 without leaving issue. By her will she devised the estate conveyed by the deed of trust to T after having previously executed a deed of the same to him. *Held*,

1st. That the testator's will was not an execution of the power of appointment reserved to him by the deed of trust, and that consequently the will did not operate to convert the estate of Clintonia in the land from an equitable life estate into a fee-simple estate, and that her will and conveyance passed no interest therein.

2nd. That at the time of making his will the contingencies had not occurred upon which the right of the testator to execute the power of appointment reserved by the deed of trust was based.

3rd. That the estate conveyed by the deed passed to the persons who answered the description of heirs of the testator at the time of the death of Clintonia.

When a testator devises property which he is not legally entitled to dispose of to A, and also gives property which he does own to B, who is entitled to a share of the property so devised to A, then B is put to an election to take, either his legal interest in the land devised to A, or the property given to him by the will.

When a legatee, who must elect either to take under a will or against it, is an infant it is the duty of the Court of equity where the estate is being administered, to make such election for the infant as may be most advantageous for him.

Appeal from the Circuit Court for Queen Anne's County (PEARCE, C. J., MARTIN and BROWN, JJ.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, BOYD, SCHMUCKER and JONES, JJ.

*J. Wilson Leakin*, for Isabel R. and Ella L. Thom.

*D. K. Este Fisher*, for Elise W. Levering.

*John Hinkley*, for Martha B. Orrick *et al.*

*Archibald H. Taylor* and *John Pierce Bruns*, for the appellee.

JONES, J., delivered the opinion of the Court.

This is the third time that questions arising in the progress of the settlement of the estate left by the late William H. DeC. Wright have been brought to this Court for adjudication. Other cases presenting such questions are reported in 73 Md. 451 and 97 Md. 139 respectively. The said Mr. Wright was married and died in 1864, leaving his wife, Eliza. L., surviving him. He and his said wife had three children, all daughters, one was Clintonia G., who married first William May and, after his death in her lifetime, Philip F. Thomas. She survived both husbands and also her father and her mother, dying in 1902. Another daughter was Victoria L., who married Samuel Levering, and who survived her father and mother, dying in 1889. The third daughter, Ella L., married J. Pembroke Thom, and predeceased her father and mother, dying in 1861.

On the 13th of October, 1853, William H. DeC. Wright and wife executed to Robert Clinton Wright a deed of an estate and landed property known as Blakeford situated in Queen Anne's County, this State, "In trust for the proper use and behoof of Clintonia Gustavia May, the wife of William May  *  *  and daughter of the said William H. DeCourcy Wright and Eliza L. Wright, his wife for and during the term of the joint natural lives of the said William May and Clintonia Gustavia May so that the said William May and Clintonia Gustavia May shall be suffered and permitted during said term to hold, use and occupy and enjoy said lands and property and to collect and receive the rents, issues and profits thereof and the same to dispose of and apply to her own use the same however to be subject to the management and supervision of the said William May but in no wise liable for his debts, contracts or engagements and from and after the death

of either of them, the said William May and Clintonia Gustavia May in trust for the survivor of them for and during the term of his or her natural life with powers to such survivor to devise and bequeath the whole or any part or parts * * * to such of the children or descendants of the said William and Clintonia Gustavia and for such estates and interests therein and in such shares or proportions as such survivor may think proper with the power also to the said William * * and Clintonia * * or the survivor of them with the consent and approbation of the hereinbefore named William H. DeCourcy Wright if he shall be then living, but if he shall be then dead with the consent and approbation of the said Eliza L. Wright if she be then living, but if she shall be then dead with the consent and approbation of the said Robert Clinton Wright if then living, but if he be then dead with the consent and approbation of the heirs of the said William H. DeCourcy Wright, and in case they or either of them should object thereto then with the consent and approbation of the Orphans' Court of said Queen Anne's County to sell, dispose of and convey absolutely or otherwise the whole or any parts or part of the lands and property hereby conveyed and to invest the proceeds in such other property as by the parties hereby authorized to sell shall deem proper and it is hereby declared that all such investments shall be deemed and taken to be held upon similar uses and trusts and with similar powers to those herein declared in relation to the specific estate hereby conveyed. And from and after the death of the survivor of them the said William * * and Clintonia * * in case no such disposition of said lands, &c., * * shall be made under the powers hereinbefore granted and in so far as no such disposition shall have been made then in trust for such of the children and descendants of the said Clintonia * * as may be then living and who shall have then attained the age of twenty-one years and their heirs *per stirpes* and for the support, maintenance and education of such child or children and descendants of the said Clintonia * * * as may be then living, but who shall

not then have attained the age of twenty-one years until such child or children then living and in their minority shall respectively arrive at the age of twenty-one years or shall die in its or their minority, and in case of the death of any such child or children or descendants dying in its or their minority then as to the portion or share of such child or children or descendants in trust for the other children and descendants of the said Clintonia   *   *   *   then living who may have arrived at the age of twenty-one years and their heirs forever and the maintenance, support and education of those still in their minority and when and as each of the aforesaid children and descendants of the said Clintonia   *   *   living at the time of the death of the survivor of them, the said William *   *   and Clintonia   *   *   and then in his, her or their minority as aforesaid shall respectively attain the age of twenty-one years then as to his, her or their share in trust for them and their heirs forever.   But if there shall be no children or descendants of the said Clintonia   *   *   living at the time of the death of the survivor of them, the said William   *   * and Clintonia   *   *   or if there be children under age as aforesaid and all of them shall die in their minority then in trust for   *   *   William H. DeCourcy Wright for and during the term of his natural life with power to him to devise and bequeath the estate and property hereby conveyed to such of his children or descendants as he may think proper and in case of his death without his having made any disposition thereof then in trust for the hereinbefore named Eliza L. Wright for and during the term of her natural life with power to her by last will and testament duly executed, to devise and bequeath the same to such of the heirs of said William H. DeCourcy Wright as she may appoint to take the same and for their heirs forever; and in case the said Eliza   *   * should make no such disposition by will as hereinbefore provided, then in trust for such person or persons as would by the now existing laws of Maryland be the heirs-at-law of the said William H. DeCourcy Wright and for their heirs forever."

In May, 1854, the grantor in the deed referred to, Mr. Wright, executed his will in which after manumitting his slaves he devises and bequeaths all the residue of his property upon certain trusts and subject to the limitations therein declared for the benefit of his three daughters subject to a provision for his wife; the concluding clause of which will is as follows: "Whereas I have heretofore advanced to my daughter, Clintonia G. May, wife of William May, the property described in a deed of real and personal estate executed by me as will more fully appear by reference to said deed. I hereby declare that my daughter and her representatives shall not be entitled to any portion of my estate until she has been charged with the sum of thirty-five thousand dollars, which I hereby assess as the value of the property so advanced to her and until she has been charged with one-third of her share or portion for the benefit of my widow as aforesaid."

To this will there were three codicils one of which, executed in February, 1858, is as follows: "Having subsequently to the execution of my will on the 22nd day of May, 1854, given property to my two daughters, Victoria and Ella, it being my will and intention they be charged with the same as part of their share of my property to place them on a footing with my daughter Clintonia, to whom I gave property valued at thirty-five thousand dollars and that after they have all received the amount of thirty-five thousand then to share and share alike in all the balance of my property."

In her lifetime Mrs. May (then Mrs. Thomas), asserting the right so to do under the power conferred by the deed of the 13th of October, 1853, her father and mother and Robert Clinton Wright, the trustee, all being dead, and some of the heirs of the grantor in the deed making objection to the execution of the power by her, applied for and obtained from the Orphans' Court of Queen Anne's County a consent to the sale by her of the property, Blakeford, described in the said deed; and thereupon sold the same to DeCourcy W. Thom, the appellee here, for the sum of $27,000. She then executed to him a deed of date 24th March, 1886, reciting that it was

made in execution of the power; and subsequently took from him a mortgage at six years, of the property so conveyed, for the whole amount of said purchase-money which remains unpaid. She also made a will, and by a codicil thereto, devised the same property to the appellee assuming to devise it "to be his solely and absolutely in fee-simple." And in the same codicil gave of certain other property, the one-half to him and one-half to be equally divided between the two children of a deceased nephew parties to this case.

The plaintiffs below in this case began proceedings therein by filing in the Circuit Court for Queen Anne's County their bill of complaint showing that they claim interests in the property in question through Mrs. Levering, one of the daughters of the grantor in the deed of the 13th of October, 1853, and under and by reason of the limitations in said deed. The object of the bill, as expressed in its prayer for relief, is to have construed the deed of trust of the 13th of October, 1853; to have determined the validity of the sale of the property in said deed mentioned, made by Mrs. Thomas with the consent and approval of the Orphans' Court of Queen Anne's County; to have in case the said sale is held valid, a proper distribution of the $27,000 purchase-money with interest and a decree for the payment thereof; to have, in case said sale is pronounced invalid, a sale made of the real estate which was the subject of the trust in the deed of the 13th of October, 1853, for the purpose of division among the parties entitled under said deed; and to have from the appellee, DeCourcy W. Thom, an inventory and account of the chattels and personal property mentioned and conveyed by the said last-mentioned deed that the same may be sold with the said real estate by a trustee to be appointed by the Court.

Mrs. Thomas, formerly Mrs. May, left at her death, no children or descendants—having never had children. The two other daughters of Mr. Wright left children and descendants, and all of these, who, under any theory of construction of the deed in question that has been suggested and urged, can take interests thereunder, have been made parties to the bill and

are represented in the appeals brought up in the record.   All
the parties answered the bill according to their several claims
of interest in the property in controversy.   Of these answers
the only one that it is necessary to refer to is that of the ap-
pellee DeCourcy W. Thom, which raises all the questions
that are presented for the consideration of the Court.

The Court below sustained the contention in the answer of the
appellee that under the true construction of the deed of the 13th of
October, 1853, in connection with the will of the grantor in the
deed, the appellee had become invested with full and absolute
title to all the property real and personal which was the sub-
ject of the trust which has been heretofore set out.   Besides
the one referred to there are alternative contentions set up in
the answer of the appellee which, in the view we have of this
case it will be necessary to notice.   The view, that controlled
the Court below in sustaining the contention that the appellee
is now invested with a full fee-simple interest in the property
in controversy, is, that the will of Wm. H. DeCourcy Wright
had the effect to convert the estate in "Blakeford" granted to
Clintonia G. May by the deed of the 13th of October, 1853,
under the limitations contained in that deed, into a fee-simple
estate in her with the consequent power of full disposition
thereof.   To this we cannot agree.   When the grantor in the
deed just referred to executed and delivered the same he
passed out of himself and to the trustee and the *cestui que
trusts* therein all of the estate in, and power and control over,
the property therein described, except so far as he may have
provided in the deed itself for any future interest in, or con-
trol over, the property conveyed by it, to be held or exer-
cised by him.   *Goodwin* v. *White*, 59 Md. 503; *Brown* v.
*Mercantile Trust Co.*, 87 Md. 394.

The only future interest or control that the deed provided
for in this regard was, that, in the contingency therein men-
tioned, the property should be held in trust for the grantor
during his natural life with power to him to devise and be-
queath the same "to such of his children or descendants as he
might think proper."   It was only by the effective execution

of this power that the grantor could control the course of devolution of the title to the property.　Was there any effective execution of this power or any intention to execute it manifested by the will which Mr. Wright subsequently made?　We think clearly not.　The Act of 1888, ch. 249, has no application here.　The rule of law to be here applied is stated in *Mory* v. *Michael*, 18 Md. 227–241, where it is said: "The intention to execute a power of appointment by will, must appear by a reference in the will to the power, or to the subject of it, or from the fact that the will would be inoperative without the aid of the power."　In 4 *Kent*, 334 (marg. 11 ed.) it is laid down.　"In the case of wills, it has been repeatedly declared, and is now the settled rule, that in respect to the execution of a power, there must be a reference to the subject of it, or to the power itself; unless it be in a case in which the will would be inoperative without the aid of the power and the intention to execute the power became clear and manifest."　See also *Farlow* v. *Farlow*, 83 Md. 118; *Foos* v. *Scarf*, 55 Md. 301; *Patterson* v. *Wilson*, 64 Md. 193.

In the case at bar there was, in the will made by Mr. Wright, or in the codicil, no reference, in any way, to the power itself.　A reading of these gives no intimation whatever of the existence of a power of any kind.　The will was certainly fully operative without the aid of the power.　The testator did not refer even to the property, which was the subject of the power, except in the most general way and without a suggestion that the reference was thus made in connection with the power in question.　He refers to the property as property "I have heretofore advanced to my daughter, Clintonia, &c.,　*　*　described in a deed of real and personal estate executed by me as will more fully appear by reference to said deed" thus making the reference one, clearly, for verification and particulars of the facts stated and nothing more. He makes no reference whatever to any future gift or disposition of the property in question either in his will or the codicil thereto.　To impute to the language used in either any such meaning or effect is to give to it the most strained construction and to indulge in pure speculation.

In this connection much has been said as to the evident intent of the testator to equalize his bounty among his children. It is not perceived how such a general purpose can, of itself, have any necessary effect to reflect upon a specific intent to execute a power.  To invoke such a consideration here would be to resort to speculation and conjecture to contradict and overthrow a specific intent manifested in the most solemn and emphatic form.  By the deed of the 13th of October, 1853, Mr. Wright had, apparently with the utmost deliberation and certainly with the greatest particularity and care, prescribed and provided how his daughter, Mrs. May, should hold and enjoy the property described in the deed, and what should be her power as to its disposition.  His will was executed only a few months later; and because this indicates or expresses a general purpose and wish that there shall be equality among his children in sharing his bounty and it is supposed, independently of any opinion indicated by him to that effect, that the deed stood in the way of such a purpose, is there afforded any evidence or any necessary or natural inference that there was in his mind at the time of the execution of the will a specific intent to nullify the deed.   But there was in fact no inequality. It is true that the will indicates that each of the other daughters had received in fee property valued at $35,000 the price at which the property in controversy was valued to Mrs. May, but the latter was given all the enjoyment of and control over, the property assigned to her that made it by no means unreasonable or unfair to value it to her as he did.   She had the enjoyment of it for herself and her husband with power to appoint it among her children, should she have any, as she might think proper, and the power to alienate for a change of investment if her enjoyment of the testator's bounty would be promoted thereby.   The restriction placed upon this power to alienate was guarded by the right to appeal finally to a judicial tribunal to approve and authorize it.   There was not in such a provision for his daughter anything to suggest to the testator, Mr. Wright, that he was not making her substantially equal with the others, or to make it unreasonable that

he should have valued the property in question to her as putting her on an equality with the other daughters.

Further than this, however, the power reserved or created by Mr. Wright for himself which has been referred to was never called into being. The circumstances did not transpire which gave authority for its exercise. In 4 *Kent*, 333–4 (marg. 11 ed.), it is laid down that "it is a general rule, that a power cannot be exercised before the time in which it was the intention of the grantor of the power that it should be exercised." We need not here go into any distinction between powers in gross and powers appendant. The question is whether, at the time of the execution of the will by Mr. Wright there existed the right to exercise the power raised to him by the deed. By every fair inference from, or construction of the instrument containing the power the same was conditional and only to be exercised in circumstances that never transpired. This is shown by the connection in which the power is conferred. Upon the happening of the contingencies expressed in the deed the property therein described is to be held in trust for the grantor for life. This equitable life estate was not to accrue, of course, until the contingencies provided for should happen. The power is coupled with the life estate and the evident reason for giving the power is that in the conditions that would then exist it would be necessary to make further disposition of the property if the grantor should then have a further wish as to a particular disposition. Until the contingencies mentioned did happen, disposition, according to the wish of the grantor, had already been made of the property and there is nothing to indicate that the power was created with a design to be used to make a change as to that. The only reason apparent for the existence of the power was that it might be used in case the contingencies expressed in connection with its creation should happen; and it was the evident intention that it was not to be exercised except upon the happening of these contingencies. It was one of a succession of powers each to be exercised upon the happening of certain specified contingencies. If one of these could be ex-

ercised at any time after the execution of the deed which cre-
ated them then they all could with the possible result of mak-
ing conflicting dispositions of the property—leaving one or
the other to take effect as circumstances should subsequently
determine.   It is not reasonable to suppose there was an in-
tention to make possible this confusion.  It is more reasonable
to suppose that the intention was, that the power should be
called into existence and the right to its exercise should arise,
when, in the orderly succession of events specified, the condi-
tion arose to make the exercise of it appropriate.

It follows from what has been said that reference must be
had to the deed of the 13th of October, 1853, unaffected by
the will and codicils, that have been referred to, to determine
the rights of the parties that are before the Court.   In respect
to this the question presented is whether, in the contingencies
that have happened to affect these rights, in gratifying the
clause in the deed that provides that the property in contro-
versy is to be "In trust for such person or persons as would,
by the now existing laws of Maryland, be the heirs at law of
the said William H. DeCourcy Wright and for their heirs
forever," the persons who are to answer the description of
heirs are to be ascertained as of the time of the death of William
H. DeCourcy Wright or as of the time of the death of Mrs. Clin-
tonia G. Thomas (the Mrs. May in the deed of trust).   That
is whether, as the contention is here on behalf of the appellee,
the property in controversy passed, at the death of Mr. Wright
to those who at the time answered the description of heirs to
the extent of giving to such persons a "transmissible and de-
visable," though contingent, title thereto; or whether it did
not vest until the death of Mrs. Clintonia G. Thomas, and then, in
those who, at that time, fell within the description of heirs,
as that term is employed in the deed.

The law favors the early vesting of estates.   This is the
settled, but not inflexible policy of the law.   In a given case
the question of the time of vesting is one of intention, as that
may be manifested in the instrument creating the estate as to
which the question arises, and this applies as well to deeds as

to wills.　The testator or grantor, as the case may be, "may fix the period of vesting to suit himself (always within the time that the rule of law fixes;)" and when this intention is manifested with reasonable certainty the law will give it effect. *Crisp* v. *Crisp*, 61 Md 149; *Cherbonnier* v. *Goodwin*, 79 Md. 55; *Demill* v. *Reid*, 71 Md. 175; *Larmour* v. *Rich*, 71 Md. 369; *Ridgely* v. *Cross*, 83 Md. 161.　Therefore when an inquiry of this sort is to be made the primary matter of consideration is the ascertainment of the intention of the grantor or testator, as the case may be, with respect to the vesting of the estate involved in the inquiry; which is to be done by a resort to the instrument he has used to create the estate and prescribe the terms of its enjoyment.

We think a careful reading of the trust clause of the deed, here in question, which has been recited, makes clear the intention of the grantor in the deed, as to the vesting of the estate limited over by the clause last recited, in the property, which is the subject of this controversy.　It is not controverted that we have here a case of alternative contingent remainders or contingent remainders with a double aspect.　It is a case in which there were, by the deed, alternative dispositions of the entire fee-simple interest in the property which was the subject of the trust.　The grantor first gave to his daughter, Mrs. May, afterwards Mrs. Thomas, an equitable life estate in the property during the joint natural lives of herself and her then husband; then an equitable life estate to the survivor of them with full discretion and power to such survivor to devise and bequeath the estate among "the children or descendants" of his said daughter and her then husband, and with the further power to his said daughter and husband or the survivor of them, with the consent of the grantor, if he should be living and if not, with the consent of the grantor's wife if she should be living, and if not with the consent of the trustee named in the deed if living and if not with the consent of the heirs of the grantor; and upon objection by them or any of them, with the "consent and approbation of the Orphans' Court of Queen Anne's County, to sell

and  dispose  of the property in question  absolutely in whole or in parts and to invest the proceeds of sales made upon like trusts as are declared in the deed.   Then, without repeating here all the language and terms of the trust which has already been recited, he provides for the final full fee-simple interest in the property going to and becoming vested in the children and descendants of his daughter, Clintonia G. May, who may be  living  at the death of herself  and husband, William May.

Here the first of the alternative fee-simple estates provided for in the deed is made to vest if the contingencies should happen to call it into existence; and if it came into existence it necessarily excluded all other interests and estates in the property and no other interest or estate of any kind in the property could come into existence under this deed.   But in case the conditions provided for in his deed never should exist; and necessarily *only* in case they should never exist he made the alternative disposition of the property and of the ultimate interest therein by providing an equitable life estate for himself in the same with the power "to him to devise and bequeath the estate and property" to such of his children or descendants as he should think proper, then in case of his death without having made such disposition of the property an equitable life estate for his wife therein with power to her to make testamentary disposition of it among his "heirs;" and finally upon the failure or non-existence of all the preceding conditions provided for in that deed by providing that the estate and property shall go to and vest in "such person or persons as would by the now existing laws of Maryland be the heirs-at-law of the said William H. DeCourcy Wright and for their heirs forever."   Here the second of the alternative fees provided for by the deed rested.   And it was entire substitution for all other estates and interest in the property provided for in the deed and to the exclusion of them all, because it could not come into existence until all previous interests and estates so provided for were non-existent and beyond the possibility of existence.   The first fee was provided for under conditions specified.   When and *only* when the conditions

that were to bring that into existence did not exist and could not exist, was the other to be called into existence. The existence of the latter began when all possibility of the other ceased.

It would seem therefore to be clearly contradictory to, and at variance with the scheme of the deed that there should be any vesting of the second fee until the possibility of the accruing of the estate which would have existed, if at all, to its entire exclusion had been removed. The event that in the contemplation of the deed removed the possibility of the first fee ever taking effect was the death of Mrs. May, or Thomas, leaving no children or descendants to take the same. Her leaving no children or descendants to whom the first fee was limited, in case of her leaving such as the deed provided for, could not be determined until her death. Neither of the life estates provided for upon the happening of that contingency ever took effect; and neither of the powers coupled with these life estates ever came into existence or was exercised. The deed provides that upon failure of the exercise of these powers *then* "In trust for such person or persons as would by the now existing laws of Maryland be the heirs at law," &c. There the second fee starts and was never called into existence until the happening of the contingency of the death of Mrs. May, or Thomas; and we are of the opinion that only those can take this estate who were *in esse* at the time of the happening of such contingency to answer the description in the deed of those that are to take. The word of heirs is used as *designatio personæ* to ascertain the person or persons who are intended as the ultimate remaindermen and not in any technical sense nor as indicating a *stirps* or stock through which title is to be derived. The case falls within the class of those of *Clagett* v. *Worthington*, 3 Gill, 83; *Demill* v. *Reid*, 71 Md. 175, and *Larmour* v. *Rich*, 71 Md. 369. The persons who now become entitled to the property in controversy are correctly designated in the plaintiff's bill. The children of Mrs. Levering will take one-half thereof to be divided equally among them; the appellee will take one-fourth and the infant appellants in equal shares will take the remaining one-fourth.

It has been noticed that Mrs. Thomas (formerly May) left a will and by a codicil thereto she undertook to devise "Blakeford" the real estate here in controversy to the appellee, DeCourcy W. Thom, absolutely; and by the same codicil bequeathed property belonging to her, independently of the estate derived from her father, to the appellee and to the infant appellants, Isabella R. Thom and Ella L. Thom, in the proportion of one-half thereof to the appellee and one-half to the infant appellants. The appellee claims that the said infant appellants, under the view which this Court has taken of the rights of the parties to this controversy under the deed of the 13th of October, 1853, ought to be put to an election whether they will take the interest which they will now have in Blakeford or the interest which the will of Mrs. Thomas gives them in the other property thereby bequeathed to them. The authorities seem to support this claim of the appellee. We find the authorities cited by the appellee are in point and have been referred to none which distinguish this case in principle from the adjudications therein made. As the case must be remanded for action by the Circuit Court in conformity with the views of this Court it will then be the duty of that Court in making final distribution among the parties of the property in controversy or the proceeds of a sale thereof to make election for the infants as may be most advantageous to them. *Hyatt* v. *Vanneck*, 82 Md. 465; *Barbour* v. *Mitchell*, 40 Md. 151; *Addison* v. *Bowie*, 2 Bland, 606.

All of the adult parties to this controversy are content that sale made by Mrs. Thomas to the appellee with the approval of the Orphans' Court, as has been mentioned, shall be held valid and that the purchase-money agreed to be paid by the appellee for the property so sold—being the property here in controversy—may stand for the property. As the infant appellants however cannot consent it becomes necessary for us to pass upon the validity of that sale and we feel constrained to hold that the same was not validly made.

Mrs. Thomas had no right or authority to make a sale of the property in fee except under the power contained in the

deed. The grantor saw fit to impose upon the exercise of the power which the deed conferred the condition that, to make its exercise valid in certain contingencies, she must get the "consent and approbation" of the Orphans' Court. . In the eye of the law this was an impossible condition. As to such an act no such tribunal existed. The Orphans' Courts are tribunals of special and "limited jurisdiction having no general or implied powers, but restricted by the law to the exercise of powers expressly delegated." *Brown* v. *Preston*, 38 Md. 373. . It is too plain for argument that the Orphans' Court as a Court had no jurisdiction to act in such a matter as was here referred to it. Its act of consent or approbation, as proceeding from the Court, was simply a nullity. That the individuals composing the Court acted as a matter of fact does not relieve from the difficulty because it is evident that the grantor did not refer the giving of consent to them as individuals but only when organized as a Court; and if the members of the Court acted in a capacity apart from their functions as a Court they were not within the authority given by the deed. We have before us in one of the briefs an opinion given by the late Mr. S. Teackle Wallis in which is maintained a view contrary to the one we have expressed on this point, but while yielding to the views there urged, all the respect due to them as coming from that eminent source we have not seen our way clear to adopt them.

. It results from the foregoing views that the decree brought up on these appeals must be reversed and the case remanded that a decree may be passed in conformity with the opinion of this Court.

*Decree reversed with costs to the appellants and case remanded.*